**David T. CREEKMORE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 41A01–0304–PC–157.

Court of Appeals of Indiana.

Dec. 18, 2003.

---

Roy L. Dickinson, Franklin, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

David T. Creekmore appeals his conviction and sentence. He questions whether the trial court erred by failing to suppress evidence gathered from his home pursuant to a search warrant. We affirm.

## FACTS AND PROCEDURAL HISTORY

On March 2, 2001, Detective Larry Sanders of the Morgan County Sheriff's Department was working road patrol on State Road 37 when he noticed a car speeding southbound and making unsafe lane changes. Detective Sanders stopped the vehicle and gave a traffic citation warning to the driver, Tyler Garresh, whom Detective Sanders had never before met. When Detective Sanders looked into the back seat of Garresh's car, he saw marijuana plants, stems, and seeds. Garresh consented to a search of his vehicle, and Detective Sanders found marijuana and psilocybin mushrooms.[1]

Detective Sanders seized the illegal substances and asked Garresh to reveal the source of the marijuana and mushrooms. Garresh said the dealer was named "Dirty Dave," (Tr. at 149), and described the dealer's residence in detail. Detective Sanders and Garresh drove to the residence in Nineveh, Indiana, and the residence matched the description Garresh had given. Before leaving Nineveh, Detective Sanders wrote down the license plate information of the vehicles in the driveway and noted the house was the third from the intersection of "775 West" and "100 North." (Id. at 46.) Detective Sanders took Garresh back to his car and let him go.

Detective Sanders ran a plate check on a silver Ford in the driveway of the house in question, and the car was registered to Fred Creekmore at a post office box in Nineveh. Detective Sanders contacted a detective from the Johnson County Sheriff's Department to inquire whether he had heard of "Dirty Dave." Detective Walters reported "he had heard someone, or that name sounded familiar to him," (id. at 26), and he "believed that he was familiar with this subject." (Id. at 30.)

Detective Sanders contacted the prosecutor's office and appeared before Judge Gray to request a search warrant. After obtaining the warrant, he met with Detective Walters and other officers to plan the execution of the warrant. At that time, Detective Walters informed Detective Sanders that the directional coordinates on the warrant were incorrect because 775 West and 100 North do not meet in Nineveh. Detective Sanders called Judge Gray and requested an addendum to the search warrant indicating the correct coordinates.[2] Judge Gray issued an addendum indicating the house was near 775 North and 100 West.[3] After talking to Judge Gray on the telephone, the officers executed the warrant and found marijuana and a

---

1. Psilocybin mushrooms are mushrooms that contain psilocybin, which is a Schedule I hallucinogenic drug. Ind.Code § 35–48–2–4(d)(20).

2. This telephone conversation was not recorded.

3. In actuality, the house is near the intersection of 775 South and 100 East. Detective Walters testified he told Detective Sanders the coordinates were 775 South and 100 East. Detective Sanders was not sure whether he gave Judge Gray correct or incorrect coordinates when they talked on the telephone.

system for indoor cultivation of psilocybin mushrooms.

The State charged Creekmore with dealing in a controlled substance, a Class B felony,[4] possession of marijuana in excess of thirty grams, a Class D felony,[5] and dealing in a controlled substance, a Class B felony.[6]

Creekmore filed a motion to suppress the evidence seized from his house. The trial court denied that motion, and it certified its denial for an interlocutory appeal. We declined to accept jurisdiction over that interlocutory appeal, and Creekmore's case proceeded to trial. During his bench trial, Creekmore renewed his request to suppress the evidence, and the trial court again denied that motion. The court found him guilty of possession of marijuana in excess of thirty grams and guilty of dealing in a controlled substance. The court sentenced Creekmore to a fifteen-year sentence to be served "nine years executed" and six years "suspended to active probation" for dealing in a controlled substance. (Appellant's App. at 127.) In addition, it sentenced him to two years executed for possession of marijuana, and the court ordered that sentence to be served concurrent with the sentence for dealing.

## DISCUSSION AND DECISION

■ Creekmore claims the trial court erred when it denied his motions to suppress the evidence collected pursuant to the search warrant. We review the trial court's ruling on a motion to suppress in a manner similar to other sufficiency questions. *Edwards v. State*, 759 N.E.2d 626, 630 (Ind.2001). We affirm if substantial evidence of probative value supports the trial court's decision. *Id.* We may neither reweigh the evidence nor assess the credibility of the witnesses, and we must consider the evidence in the light most favorable to the trial court's decision. *Id.*

■ The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. U.S. Const. Amend. IV. The Fourteenth Amendment extended to state governments the Fourth Amendment's requirements for constitutionally valid searches and seizures. *Figert v. State*, 686 N.E.2d 827, 830 (Ind.1997). When a defendant challenges whether evidence was gathered properly under the Constitution, the State bears the burden of proving the evidence was admissible. *See, e.g., Edwards*, 759 N.E.2d at 630 (discussing admissibility under the Fourth Amendment of evidence gathered by warrantless search); *Carter v. State*, 730 N.E.2d 155, 157 (Ind.2000) (discussing admissibility of confession under the Fifth Amendment).

### 1. *Probable Cause*

■ The Fourth Amendment demands that no search warrant be issued unless it is supported by probable cause. U.S. Const. Amend. IV ("no warrant shall issue, but upon probable cause"). Probable cause is "a fluid concept incapable of precise definition . . . [that] is to be decided based on the facts of each case." *Figert*, 686 N.E.2d at 830. "Probable cause to search premises is established when a sufficient basis of fact exists to permit a reasonably prudent person to believe that a search of those premises will uncover evidence of a crime." *Esquerdo v. State*, 640 N.E.2d 1023, 1029 (Ind.1994).

■ When deciding whether to issue a search warrant, the issuing judge's task is

---

**4.** Ind.Code § 35–48–4–7.

**5.** Ind.Code § 35–48–4–10(a)(2)(c).

**6.** Ind.Code § 35–48–4–2(a)(1).

"simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Figert,* 686 N.E.2d at 830 (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), *reh'g denied* 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983)).

■■■ If a defendant questions the validity of the search warrant, the trial court's duty is to determine whether a "substantial basis" existed to support the judge's finding of probable cause. *Id.* " 'Substantial basis requires the reviewing court, with significant deference to the [judge]'s determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination' of probable cause." *Id.* (quoting *Houser v. State,* 678 N.E.2d 95, 99 (Ind. 1997)). When conducting its review, the trial court may consider "only the evidence presented to the issuing [judge] and not post hoc justifications for the search." *Id.* We review the issuance of a search warrant under the same standard the trial court employs. *Id.*

Creekmore claims there was no probable cause supporting the issuance of a warrant for his house because the only evidence implicating Creekmore's residence was Garresh's hearsay statement and "Garresh's credibility as an informant was never established." (Appellant's Br. at 9.) The State claims Garresh's credibility was established by the fact that Garresh implicated himself in dealing in marijuana and psilocybin mushrooms, rather than just possessing those items.

■■■ Uncorroborated hearsay from an informant whose credibility is unknown cannot provide probable cause to issue a search warrant. *Iddings v. State,* 772 N.E.2d 1006, 1013 (Ind.Ct.App.2002), *trans. denied* 783 N.E.2d 700 (Ind.2002). Accordingly, Ind.Code § 35–33–5–2 requires:

> (b) When based on hearsay, the affidavit must either:
>> (1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or
>> (2) contain information that establishes the totality of the circumstances corroborates the hearsay.

However, "[d]eclarations against penal interest can furnish sufficient basis for establishing the credibility of an informant within the meaning of Ind.Code § 35–33–5–2(b)(1)." *Houser,* 678 N.E.2d at 100.

At the hearing to determine whether the search warrant would issue, Detective Sanders told the court:

> [T]he reason I believe he's telling me the truth, Your Honor, being truthful that there is more in the house is that he admitted to me that he is delivering drugs to a residence who [sic] is transferring the drugs to ... and admitted to me that he had done it on other occasions and also [sic], which was against his own interest[.]

(Defendant's Ex. 1, p. 6.) In addition, Detective Sanders informed the court Garresh said his dealer's name was "Dirty Dave" and Detective Walters, who investigated drug crimes in the Nineveh area, reported that he had heard tips regarding a "Dirty Dave" in that area.

In *Iddings,* we held that an informant was a credible source because, while informing police that drugs would be found at the defendant's house, the informant also implicated himself in the manufacture of methamphetamine with the defendant at the defendant's house. *Iddings,* 772

N.E.2d at 1014. Similarly, here, Garresh's credibility can be inferred because in reporting the source of the drugs in his car, Garresh implicated himself in the delivery of marijuana and psilocybin mushrooms from Creekmore to someone in Indianapolis. In addition, that Detective Walters had heard of "Dirty Dave" suggests Garresh was being honest about his dealer's name. Accordingly, there was a substantial basis for the issuing judge to conclude there was probable cause to believe marijuana and mushrooms would be found at Creekmore's house. *See id.* The trial court did not err when it denied Creekmore's motion to suppress based on lack of probable cause. *See id.*

### 2. *Improper Road Names*

 Creekmore claims the search warrant was fatally defective because of improper road designations. Creekmore's residence is three houses from the intersection of 775 South and 100 East in Nineveh, Indiana. However, Detective Sanders requested a warrant to search the third house from the intersection of "775 W" and "100 N" in Nineveh, Indiana. (Defendant's Ex. 2, at 5.) Then, when Detective Walters told Detective Sanders those numbers, but not the directional designations, correspond to an intersection in Nineveh, Detective Sanders contacted the Judge to obtain an addendum to the warrant. Judge Gray issued an addendum indicating the roads were "775 N. and 100 W." (Defendant's Ex. 3, at 1.)

As a preliminary matter, we must deal with the validity of the addendum to the search warrant. Creekmore claims reversible error occurred because the telephone communication between Detective Sanders and Judge Gray, during which Detective Sanders requested the addendum to the search warrant changing the location of the house, was not recorded as required by Ind.Code § 35–33–5–8.[7] In *State v. Davis,* 770 N.E.2d 338, 342 (Ind. Ct.App.2002), we concluded that a search warrant obtained pursuant to an unrecorded telephone call was invalid because there was no way for the State to prove that the requirements of the Fourth Amendment had been met. In *Timmons v. State,* 723 N.E.2d 916, 920 (Ind.Ct.App.2000), *aff'd in part & vacated in part on reh'g* 734 N.E.2d 1084 (Ind.Ct.App.2000), *trans. denied* 741 N.E.2d 1259 (Ind.2000), we held an arrest warrant was "nonexistent" because the State failed to comply with most of the requirements of Ind.Code § 35–33–5–8.

·This case is distinguishable from those two cases because here, probable cause for the search warrant was demonstrated in the presence of the judge at the earlier probable cause hearing, thus satisfying the requirements of Ind.Code § 35–33–5–2.[8] The only fact dealt with during the telephone call was the ·directional coordinates of the streets listed in the warrant. Those directional coordinates did not affect whether there was probable cause to search Creekmore's house. Accordingly, we need not hold that the entire warrant was invalid or non-existent for failure to comply with the recording requirement of Ind.Code § 35–33–5–8. At most we need consider only the directional coordinates invalid.

However, those incorrect directional coordinates do not require us to suppress the evidence collected. First, the good faith

---

**7.** That statute outlines the procedure by which a judge may issue a warrant without being presented a copy of the probable cause affidavit required by Ind.Code § 35–33–5–2.

**8.** That statute describes the information that must be included in the probable cause affidavit that must be presented to a judge before a search or arrest warrant may be issued.

exception allowed Detectives Sanders and Walters to rely on the addendum. If evidence is collected pursuant to "a search warrant that was properly issued upon a determination of probable cause by a neutral and detached magistrate, that is free from obvious defects other than nondeliberate errors made in its preparation, and that was reasonably believed by the law enforcement officer to be valid," then the evidence is admissible at trial. Ind.Code § 35–37–4–5(b)(1)(A).

In *Timmons*, we held the good faith exception could not apply to the warrant obtained in violation of Ind.Code § 35–33–5–8 because the warrant was not "free from obvious defects" when police completely failed to follow the statutory procedure for obtaining a telephonic warrant. *Timmons*, 734 N.E.2d at 1088. As we noted above, however, the facts here are different from *Timmons* because Detective Sanders was obtaining only a change in the directional coordinates of the intersection where the house was located in Nineveh. Both Detective Sanders and Detective Walters had reason to believe the addendum would be correct. Because Detective Sanders had not "completely failed" to follow the proper procedures for obtaining the search warrant, he could in good faith rely on the addendum to the warrant being valid.

Second, incorrect address information does not necessarily invalidate a warrant. Search warrants must particularly describe the place to be searched. U.S. Const. Amend. IV (warrant shall "particularly describ[e] the place to be searched"); Ind. Const., Art. I, Sect. 11 ("No warrant shall issue, but ... particularly describing the place to be searched...."); Ind.Code § 35–33–5–2 ("No warrant for search ... shall be issued until there is filed with the judge an affidavit: (1) particularly describing (A) the house or place to be searched...."). Nevertheless, suppression of evidence collected is not required, despite a minor error in the address, if the warrant "sufficiently described the property to be searched despite the mistake." *Houser*, 678 N.E.2d at 101.

For example, in *Houser*, the following error occurred in the search warrant:

[T]he warrant here erroneously placed Lee's Automotive at 1435 South Hoyt Avenue, when the correct address was 1435 South Kinney Avenue. However, the warrant did correctly state that officers were to search a cement block building bearing the words "Lee's Automotive." Houser's business was located on a "triangular piece of land" bordered by South Hoyt, South Kinney and West Eighth Street.

*Id.* at 100–101. Our supreme court held that under those facts, the warrant was sufficiently specific to pass constitutional and statutory muster. *Id.* at 101.

Herein, the search warrant indicated the following information regarding Creekmore's residence:

YOU ARE HEREBY AUTHORIZED, DIRECTED AND COMMANDED To Search the following residence; Po [sic] Box 121, Nineveh, Johnson County, Indiana. The residence appears to be a one[-]story residence that is light greenish in color with black in color shutters on the residence. The residence also is located just north of the intersection of 775 W and 100 N in Johnson County. The residence appears to be the third residence north from the intersection of 775/100 and is located on the west side of County road 100. The residence appears to have a chain link style fence around the residence, also a silver in color ford vehicle bearing Indiana Lic# KA9VRB is located on the north side of the residence in the driveway.

(Def. Ex. 2, p. 5.) The addendum modified the warrant such that "the location of the residence to be searched ... [is] 775 N. and 100 W. on the south side of 100." (Def. Ex. 3, p. 3.)

While 775 West, 100 North, 775 North, and 100 West do not pass through Nineveh, Indiana, 775 South and 100 East intersect in downtown Nineveh. Creekmore's house is the third house from that intersection, and his house matches the visual description given. Detective Sanders testified only one house in Nineveh, Creekmore's house, matched the description in the search warrant. Given these facts, the warrant here sufficiently described the property to be searched despite the mistake. *See Houser*, 678 N.E.2d at 101.

Because the evidence indicated Garresh's hearsay statement was reliable, probable cause existed for the search of Creekmore's house. Improper road designations did not make the warrant invalid because the warrant sufficiently described the place to be searched, and Detectives Sanders and Walters in good faith could rely on the addendum to the warrant. Accordingly, the trial court did not err when it denied Creekmore's motion to suppress.

Affirmed.

DARDEN, J., and BARNES, J., concur.