**Mary CHEEVER–ORTIZ, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 41A01–0406–CR–236.**

Court of Appeals of Indiana.

April 19, 2005.

Michael R. Auger, Jones Hoffman Admire & Newcomb, Franklin, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Chief Judge.

Mary Cheever–Ortiz contends that the trial court erred in denying her motion to suppress evidence seized from her residence pursuant to a search warrant, resulting in her conviction for dealing in a schedule II controlled substance [1] as a Class B felony and dealing in marijuana in excess of ten pounds,[2] a Class C felony. On appeal, Cheever–Ortiz presents the following restated issue for our review: Whether the search warrant was based upon probable cause.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On February 2, 2001, around 9:30 p.m., Detective Matthew Fillenwarth of the Greenwood Police Department telephoned Judge Kim Van Valer Shilts of the Johnson Superior Court to obtain a warrant to search Cheever–Ortiz's home. Brad Cooper, from the Johnson County Prosecutor's Office, Detective Fillenwarth, and Judge Van Valer Shilts participated in the conversation. After being sworn in by the Judge, Detective Fillenwarth, in support for his claim that there was probable cause to search Cheever–Ortiz's residence, orally provided the following information.

At 7:30 that same evening the Greenwood Police Dispatch Center received an anonymous complaint that a female resident of the condominiums near Valle Vista,

---

1. *See* IC 35–48–4–2(a)(2).

2. *See* IC 35–48–4–10(a)(1).

"who goes by the name of Cookie," had just received a fifty-pound shipment of marijuana, which she was storing in her home. *Appellant's Appendix* at 39. The caller, who originally wanted to speak with a narcotics officer, stated that she knew that the Greenwood Police had previously investigated Cookie for marijuana trafficking, had obtained a search warrant in connection with that investigation, and had searched Cookie's home but had missed the marijuana shipment. *Id.* The police knew that Cheever–Ortiz used the "street name of Cookie," among other aliases. *Id.* at 40.

Detective Fillenwarth informed Judge Van Valer Shilts that the caller was correct about a previous Greenwood Police investigation of Cheever–Ortiz. Detective Fillenwarth also confirmed that during that 1999 investigation, the Greenwood Police, while executing the search warrant, entered Cheever–Ortiz's home with drug-sniffing dogs. The dogs "indicated on the cars in her garage and driveway," but only a small amount of marijuana was found in the home. *Id.* While police did not find the shipment, the search of Cheever–Ortiz's home revealed, "that [she] was heavily involved in marijuana trafficking." *Id.*

During the telephone call, Detective Fillenwarth also told Judge Van Valer Shilts that a few weeks earlier he had been involved in the arrest of James Jones, who was suspected of dealing cocaine. After learning from the Marion County Jail that Jones intended to arrange for the murder of a State's informant, Detective Fillenwarth was allowed to monitor Jones's telephone calls from jail. Through these calls, Detective Fillenwarth overheard an unknown female report that a "James" was in Miami with "Cookie," and that James was soon going to be bringing back to Indianapolis a "shipment of dope" for Cookie. *Id.* at 44.

On the basis of Jones's phone conversation and the anonymous complaint called in earlier that evening, Detectives Jeffrey McCorkle and Fillenwarth set up surveillance of Cheever–Ortiz's residence at 672 Cielo Vista Drive in Greenwood, Indiana. Detective Fillenwarth then returned to the police station and left Detective McCorkle in charge of the surveillance. Soon thereafter, Detective McCorkle reported to Detective Fillenwarth that two white males had pulled up, exited their vehicle, and entered the residence. A short time later, another man was seen leaving the residence, getting into a blue and silver van parked in the driveway, and driving away. Detective McCorkle believed that reasonable suspicion existed to stop the van and radioed ahead to a uniformed officer, Officer Richard Kelly.

Detective Fillenwarth informed Judge Van Valer Shilts that Officer Kelly initiated a stop of the van after noting that its driver was not wearing a seatbelt. Officer Kelly reported that he approached the van and, through his training as a police officer, recognized a very strong odor of raw marijuana coming from the interior of the van. After the van was transported to the Greenwood Police Station, Detective Fillenwarth likewise noted a strong odor emanating through the open driver's side window and reported that, from his training and experience, he knew the odor to be that of raw marijuana. Glancing inside the van, Detective Fillenwarth saw two large garbage bags. Inside the bags the police found what appeared to be numerous pounds of marijuana packaged separately in one-pound bricks.

Judge Van Valer Shilts confirmed with Detective Fillenwarth that the van was the same one that left Cheever–Ortiz's residence. After obtaining a description of the Cheever–Ortiz residence, Judge Van Valer Shilts telephonically agreed to issue

a warrant to search the house for marijuana and for paraphernalia related to its use, ingestion, or distribution.

Execution of the search warrant at Cheever–Ortiz's residence resulted in the recovery of forty pounds of marijuana. Prior to trial, Cheever–Ortiz filed a motion to suppress the evidence found in her home. After a hearing on the matter, the trial court denied the motion, and trial commenced on October 28, 2003. On October 30, 2003, the jury found Cheever–Ortiz guilty on both counts. She now appeals.

## DISCUSSION AND DECISION

Cheever–Ortiz contends that Detective Fillenwarth failed to supply sufficient information, pursuant to the warrant affidavit requirement of IC 35–33–5–2, for the issuing judge to conclude that there was probable cause to search Cheever–Ortiz's home. More specifically, she argues that the trial court should have granted her motion to suppress the evidence seized from her residence when the information that formed the basis for probable cause consisted of stale facts and the uncorroborated comments of an anonymous informant. *See Jaggers v. State*, 687 N.E.2d 180, 181 (Ind.1997) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). Cheever–Ortiz alleges that use of the improperly seized evidence violated her rights under the Fourth Amendment to the United States Constitution.[3] By contrast, the State argues that Detective Fillenwarth's sworn statement contained sufficient information such that reasonable inferences drawn from the totality of the evidence

supported the determination of probable cause.

In deciding whether to issue a search warrant, the task of the issuing judge is to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Query v. State*, 745 N.E.2d 769, 771 (Ind.2001) (citing *Gates*, 462 U.S. at 238, 103 S.Ct. at 2317, 76 L.Ed.2d 527); *Hensley v. State*, 778 N.E.2d 484, 487 (Ind. Ct.App.2002). The reviewing court is required to determine whether the issuing judge had a "substantial basis" for concluding that probable cause existed. *Query*, 745 N.E.2d at 771 (quoting *Gates*, 462 U.S. at 238–39, 103 S.Ct. at 2332); *Hensley*, 778 N.E.2d at 487. A substantial basis requires the reviewing court, with significant deference to the issuing judge's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. *Query*, 745 N.E.2d at 771; *Houser v. State*, 678 N.E.2d 95, 99 (Ind.1997). "A 'reviewing court' for these purposes includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision." *Query*, 745 N.E.2d at 771. In our review, we consider only the evidence presented to the issuing judge and may not consider post hoc justifications for the search. *Id.* (citing *Seltzer v. State*, 489 N.E.2d 939, 941 (Ind.1986)).

The Fourth Amendment to the United States Constitution, which is made applicable to the states by reason of the Fourteenth Amendment, protects citizens

---

3. In her appellate brief, Cheever–Ortiz also cites to a violation of Article 1, Section 11 of the Indiana Constitution, but develops no state constitutional argument separate from federal law. *Appellant's Brief* at 5. Therefore, we apply only the Fourth Amendment search and seizure law in the instant case. *See Crabtree v. State*, 762 N.E.2d 217, 220 (Ind.Ct.App. 2002).

from unreasonable searches and seizures. *Creekmore v. State,* 800 N.E.2d 230, 233 (Ind.Ct.App.2003). The Fourth Amendment demands that no search warrant be issued unless it is supported by probable cause. *Id.* Probable cause is a fluid concept, which is decided based on the facts of each case. *Id.* " 'Probable cause to search premises is established when a sufficient basis of fact exists to permit a reasonably prudent person to believe that a search of those premises will uncover evidence of a crime.' " *Id.* (quoting *Esquerdo v. State,* 640 N.E.2d 1023, 1029 (Ind.1994)).

■ Probable cause to issue a search warrant cannot be supported by uncorroborated hearsay from an informant whose credibility is unknown. *Creekmore,* 800 N.E.2d at 234. IC 35–33–5–2(b) requires that when a warrant is sought based on hearsay, an affidavit supporting the probable cause must either:

(1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or

(2) contain information that establishes that the totality of the circumstances corroborates the hearsay.

IC 35–33–5–8 allows an exception to IC 35–33–5–2 and permits a judge to receive the same information that would otherwise be included in this affidavit through sworn oral testimony.

■ The reliability of hearsay may be established if: (1) the informant has given correct information in the past; (2) independent police investigation corroborates the informant's statements; (3) some basis for the informant's knowledge is demonstrated; or (4) the informant predicts conduct or activities by the suspect that are not ordinarily predictable. *Jaggers,* 687 N.E.2d at 182; *Newby v. State,* 701 N.E.2d

593, 598 (Ind.Ct.App.1998). Depending on the facts, other considerations may come into play in establishing the reliability of the informant or the hearsay. *Jaggers,* 687 N.E.2d at 182.

■ Cheever–Ortiz contends that the issuing judge erred in considering the 1999 search as part of the totality of the circumstances to support probable cause because that information was stale. However, stale information, while not supporting a finding of probable cause, still gives rise to a mere suspicion. *See State v. Haines,* 774 N.E.2d 984, 990 (Ind.Ct.App.2002), *trans. denied* (2003). Here, Detective Fillenwarth told Judge Van Valer Shilts that earlier that evening Greenwood Police had received the anonymous complaint that "Cookie," who lived in the condominiums by Valle Vista, had just received a fifty-pound shipment of marijuana that she was storing in her house. The police knew Cheever–Ortiz used the street name of "Cookie." As a means of demonstrating some basis for the informant's knowledge, Detective Fillenwarth told the judge that the informant also correctly knew about a previous investigation of "Cookie's" marijuana dealing. This provided some credibility to the otherwise anonymous tip.

Our court has not held that stale information cannot be considered, but merely that it alone cannot support a finding of probable cause. *Seeley v. State,* 782 N.E.2d 1052, 1060 (Ind.Ct.App.2003), *trans. denied, cert. denied,* 540 U.S. 1020, 124 S.Ct. 573, 157 L.Ed.2d 437 (2003). Judge Van Valer Shilts did not rely solely on the 1999 investigation in finding probable cause to search Cheever–Ortiz's residence. Instead, that information gave rise to a mere suspicion that Cheever–Ortiz might still be dealing in marijuana. The trial court neither erred in questioning Detective Fillenwarth about the 1999 in-

vestigation nor in considering that information as part of the totality of the circumstances creating probable cause.

■ Cheever–Ortiz next asserts that the trial court erred in concluding that the information gathered during the police surveillance was sufficient to show that the anonymous tip was reliable and that the totality of the circumstances created a practical, substantial basis for a valid search. *Appellant's Brief* at 11. An anonymous tip alone cannot provide the basis for probable cause. *See Gates,* 462 U.S. at 268, 103 S.Ct. at 2348. However, Indiana law makes clear that an anonymous tip, along with a showing of a basis for the informant's knowledge and corroboration by independent police work, will support probable cause. *Newby,* 701 N.E.2d at 598. Here, not only did the informant know that a large quantity of marijuana had been delivered to and was being stored in the Cheever–Ortiz residence, but he also knew that Cheever–Ortiz had been previously investigated in connection with marijuana dealing, that a warrant had been issued in connection with that investigation, and that police had missed the shipment. Furthermore, the tapping of Jones's phone conversations confirmed that a shipment of marijuana would soon be delivered to Cookie in Indianapolis. Finally, while conducting surveillance on Cheever–Ortiz's home, the police noted two young men enter the home, and a third young man exit the home and leave in a van that had been parked in the driveway. From previous investigations, the police knew that Cheever–Ortiz used young males to transport her marijuana. *Appellant's Appendix* at 48. After stopping the driver of the van for a seatbelt violation, the police found two large garbage bags containing several pounds of marijuana in the van.[4] This flurry of activity, only two hours after police received the anonymous tip, suggested that the marijuana was already being transported from Cheever–Ortiz's residence.

In deciding whether to issue a search warrant, the task of the issuing judge is to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Query,* 745 N.E.2d at 771. Given the information presented to Judge Van Valer Shilts, we agree that there was a substantial basis to determine that probable cause existed to issue a search warrant for Cheever–Ortiz's residence.

Affirmed.

NAJAM, J., and VAIDIK, J., concur.

---

4. A traffic stop based on the failure of a driver to wear a seatbelt does not, standing alone, provide reasonable suspicion for the police to unilaterally expand their investigation and "fish" for evidence of other possible crimes. *State v. Morris,* 732 N.E.2d 224, 228 (Ind.Ct. App.2000). However, "when circumstances arise after the initial stop that create reasonable suspicion of other crimes, further reasonable inspection, search, or detention is no longer 'solely' because of a seatbelt violation and does not contravene the plain language of the statute." *Id.* Here, the smell of raw marijuana that met Officer Kelly as he approached the driver's open window created reasonable suspicion of a drug-related crime.