Andrew Joseph SCOTT, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 65A01–0705–CR–241.

Court of Appeals of Indiana.

March 24, 2008.

William W. Gooden, Mount Vernon, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arturo Rodriguez II, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

1. Ind.Code § 35–48–4–1.1(a) (2006).

2. Ind.Code § 35–48–4–6.1 (2006).

## OPINION

BRADFORD, Judge.

After two bench trials, Appellant–Defendant Andrew Joseph Scott was convicted of two counts of Class B felony Methamphetamine Manufacture,[1] one count of Class D felony Methamphetamine Possession,[2] and two counts of Class D felony Possession of Chemical Precursors with Intent to Manufacture a Controlled Substance ("possession of precursors").[3] Scott contends that the trial court abused its discretion in admitting evidence discovered pursuant to a search warrant because the search warrant was not properly filed with the trial court and was unsupported by probable cause in any event. We affirm.

## FACTS

At around 8:15 p.m. on October 10, 2006, Posey County Sheriff's Deputies Mark Saltzman and John Montgomery obtained a search warrant for Scott's home. The warrant was signed by Judge S. Brent Almon, who was apparently reached at home, and who retained a copy of the warrant and associated probable cause affidavit, which he gave to his court reporter the next day. The probable cause affidavit, sworn out by Deputy Saltzman, provided the following:

> In support of your affiant's assertion of Probable Cause, your affiant would show the following:
>
> 1. Your affiant states that he is a deputy with the Posey County Sheriff's Department. I received information from Kenny Rose, an investigator with the Posey County Prosecutor's Office, regarding the investigation described in this affidavit. Kenny Rose advised that he had received information from Van-

3. Ind.Code § 35–48–4–14.5(b) (2006).

derburgh County Deputy Shawn Madden in reference to a subject named Rodney Merritt who was illegally manufacturing methamphetamine in Posey County. I also received information from Deputy Madden regarding the investigation described in this affidavit. Deputy Madden had been advised by a confidential informant that the informant had information that Merritt had been manufacturing methamphetamine regularly over the past approximately two months. Deputy Madden advised that he did not have the exact address being used by Merritt; however, he had received directions to the location where Merritt was manufacturing methamphetamine and that he received this information from the informant. The informant advised Deputy Madden that Merritt had been manufacturing methamphetamine in a trailer which had been partially buried in a hillside on the property. Deputy Madden provided the directions to the location to Kenny Rose, and Kenny Rose followed the directions and ended up at the residence of Andrew Scott, located at 8622 Welborn Road, Evansville, Indiana in Posey County.

2. I was involved in the investigation of the illegal manufacturing of methamphetamine at the same address, 8622 Welborn Road, in October 2002. During this investigation, a clandestine methamphetamine lab was located on the property at 8622 Welborn Road. One of the residents of the property at this time and the owner of the property at the time was Andrew Scott. Scott was convicted of criminal offenses, including Dealing in a Schedule II Controlled Substance and Possession of Chemical Reagents or Precursors with Intent to Manufacture, as a result of this investigation in 2002. The defendant received executed time at the Indiana Department of Corrections as part of his sentence.

3. Since the defendant's release from prison, members of the Posey County Sheriff's Department have received information from several sources that Andrew Scott has again been manufacturing methamphetamine at the 8622 Welborn Road property. This information has been corroborated by the fact that law enforcement officers have smelled the odor of ether coming from the property on numerous occasions. I, myself, have smelled ether coming from the subject property on at least three occasions. The last time I noticed the odor was within the last two months. I and other officers are familiar with the odor of ether because we have been trained in the identification of the odor and have had experience with the odor in other investigations involving the illegal manufacture of methamphetamine.

4. At approximately 5:15 p.m. on this date (October 10, 2006), John Montgomery, a deputy with the Posey County Sheriff's Department, spoke to a concerned citizen regarding the property at 8622 Welborn Road. The concerned citizen advised that he/she had been near the property of Andrew Scott at 8622 Welborn Road on today's date. While near the property, the concerned citizen advised that he/she had observed several things including the following: a camouflage tent, a camouflage pick-up truck next to the tent, a black plastic tub, a styrofoam cooler, numerous cans on the ground which appeared to be starting fluid cans, and a black welding tank on the ground. The concerned citizen stated that he/she smelled the odor of ether in the air and that he/she knew it to be ether because he/she had smelled it on previous occasions. The concerned citizen advised that he/she and another in-

dividual who was with him (hereafter referred to as the second concerned citizen) heard voices coming down a hill from the residence and that they began to leave the area. The concerned citizen advised that the second concerned citizen had observed two individuals walking down the hill with glass jars in their possession.

5. Your affiant has been a deputy with the Posey County Sheriff's Department for approximately eight years. Your affiant has had training in the investigation of narcotics cases, including attending school on the investigation of clandestine methamphetamine labs. This training included, but was not limited to, training regarding evidence related to the manufacturing, possession, use and dealing of methamphetamine. Your affiant has—attended schools regarding drug investigations sponsored by organizations, such as the Drug Enforcement Administration (DEA), Indiana Law Enforcement Academy, Indiana State Police and the Posey County Narcotics Unit. Your affiant has participated in the investigation of approximately 300 methamphetamine labs.

6. Your affiant is familiar with the use of ether during the process of the clandestine manufacture of methamphetamine. Ether is commonly used as an organic solvent in the clandestine manufacture of methamphetamine. Ether is the active ingredient in starting fluid and cans of starting fluid are often punched and drained so the ether can be obtained and then used in the process of manufacturing methamphetamine. Anhydrous ammonia is a necessary ingredient in the manufacture of methamphetamine using the Nazi method and is often stolen and then stored in containers like welding cylinders. Glass jars are commonly used as reaction vessels during the process of manufacturing methamphetamine.

7. Your affiant attests that the above information is credible and reliable in that he obtained it during the normal course of his investigative duties as a deputy with the Posey County Sheriff's Department. Your affiant believes that the information received from the confidential informant described above and the concerned citizens described above is credible and reliable because further investigation corroborated information provided by these individuals.

Appellant's App. pp. 28–30.

The search of Scott's residence uncovered evidence of an active methamphetamine manufacturing operation. On January 24, 2007, in cause number 65C01–0703–FB–23 ("Cause 23"), the State charged Scott with Class B felony methamphetamine manufacture and Class D felony possession of precursors and obtained a warrant for his arrest.

On January 26, 2007, police arrived at Scott's home to serve the arrest warrant. Deputies Saltzman and Robinson knocked on Scott's door and announced that they had an arrest warrant. Several times, Scott yelled from inside that the police needed to leave if they did not have a warrant, despite being told several times that the police had a warrant. When Deputy Saltzman "breached" a door and attempted to push his way inside, Scott pushed back. Tr. p. 108. Eventually, Deputy Saltzman was able to reach Scott and subdue him.

As soon as Deputy Saltzman breached the door, he detected the odor of ether, and when police performed a protective sweep of the residence, they noticed several indications of methamphetamine manufacture. Police obtained another search warrant and again found evidence of an active methamphetamine lab upon its exe-

cution. On January 29, 2007, in cause number 65C01–0701–FB–16 ("Cause 16"), police charged Scott with Class B felony methamphetamine manufacture, Class D felony methamphetamine possession, Class D felony possession of precursors, and Class A misdemeanor marijuana possession.

In March of 2007, Scott's trial counsel attempted to locate the October 10, 2006, search warrant and probable cause affidavit in the Posey County Clerk's Office, which did not have them. The search warrant was finally filed with the clerk's office on April 2, 2007, after having been in the custody of Judge Almon's court reporter since soon after October 10, 2006. The trial court denied Scott's pretrial motion to suppress evidence discovered pursuant to both search warrants executed at his residence.

In Cause 23, Scott was found guilty of methamphetamine manufacture and possession of precursors, and, in Cause 16, methamphetamine manufacture, methamphetamine possession, and possession of precursors. In Cause 23, the trial court sentenced Scott to ten years of incarceration for methamphetamine manufacture and one and one-half years for possession of precursors, to be served concurrently. In Cause 16, the trial court sentenced Scott to ten years of incarceration for methamphetamine manufacture, one and one-half years for methamphetamine possession, and one and one-half years for possession of precursors, all sentences to be served concurrently with each other and with those imposed in Cause 23.

## DISCUSSION AND DECISION

■ Although Scott frames the issue as a challenge to the denial of his pretrial motion to suppress evidence, he actually appeals from the allegedly erroneous admission of evidence at trial. The admissibility of evidence is within the sound discretion of the trial court. *Curley v. State,* 777 N.E.2d 58, 60 (Ind.Ct.App.2002). We will only reverse a trial court's decision on the admissibility of evidence upon a showing of an abuse of that discretion. *Id.* An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.* The Court of Appeals may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court. *Moore v. State,* 839 N.E.2d 178, 182 (Ind.Ct.App. 2005). We do not reweigh the evidence, and consider the evidence most favorable to the trial court's ruling. *Hirshey v. State,* 852 N.E.2d 1008, 1012 (Ind.Ct.App. 2006).

## I. Whether the Probable Cause Affidavit was Properly Filed

■ Scott contends that the probable cause affidavit supporting the October 10, 2006, search warrant was not properly "filed" because, although it was left with the judge and retained by his court reporter, it was not filed with the Posey County Clerk's Office until April 2, 2007. Indiana Code section 35–33–5–2(a) provides:

Except as provided in section 8 of this chapter, no warrant for search or arrest shall be issued until there is filed with the judge an affidavit:

(1) particularly describing:

(A) the house or place to be searched and the things to be searched for; or

(B) particularly describing the person to be arrested;

(2) alleging substantially the offense in relation thereto and that the affiant

believes and has good cause to believe that:

> (A) the things as are to be searched for are there concealed; or
>
> (B) the persons to be arrested committed the offense; and

(3) setting forth the facts then in knowledge of the affiant or information based on hearsay, constituting the probable cause.

■ As in the recent case of *Moseby v. State*, 872 N.E.2d 189 (Ind.Ct.App.2007), we are called upon to determine whether the October 10, 2006, affidavit was "filed" under Indiana Code section 35–33–5–2. Questions of statutory interpretation are reviewed *de novo*. *Moseby*, 872 N.E.2d at 190 (citing *Lake County Auditor v. Burks*, 802 N.E.2d 896, 898 (Ind.2004)). "Merely exhibiting an affidavit to the judge, or executing it before him, is not a 'filing' of the affidavit with the judge." *Thompson v. State*, 190 Ind. 363, 367, 130 N.E. 412, 413 (1921). Rather, "[f]iling consists of the delivery of the paper to the proper officer for the purpose of being kept on file by him in the proper place." *Id.*

■ The plain language of Indiana Code section 35–33–5–2 requires that the affidavit be filed with the judge, and that requirement was clearly met here. Deputy Saltzman apparently personally handed the affidavit to Judge Almon, and we believe that hand-delivery to the actual person specified by the statute easily qualifies as filing. We acknowledge that clerks of superior and circuit courts in Indiana are the legal custodians of all documents filed in those courts and that the "proper place" for those documents is, therefore, in their offices. *See Darrow v. Chicago, Lake*

*Shore & South Bend R.R. Co.*, 169 Ind. 99, 102, 81 N.E. 1081, 1082 (1907).[4] It is clear to us, however, that Deputy Saltzman delivered the affidavit "to the proper officer *for the purpose of* being kept on file by him in the proper place[,]" even if it was delayed in reaching that proper place. *Thompson*, 190 Ind. at 367, 130 N.E. at 413 (emphasis added). There is nothing in the record to suggest that Deputy Saltzman had any reason to believe that the affidavit would not be promptly filed with the clerk, and, in the end, we are at a loss to see how he could have more fully complied with Indiana Code section 35–33–5–2. We conclude that the affidavit supporting the October 10, 2006, search warrant was properly filed.

## II. Whether the October 10, 2006, Search Warrant was Supported by Probable Cause

■ Scott further contends that the October 10, 2006, search warrant for his residence was not supported by probable cause. "An affidavit demonstrates probable cause to search premises if it provides a sufficient basis of fact to permit a reasonably prudent person to believe that a search of those premises will uncover evidence of a crime." *Hensley v. State*, 778 N.E.2d 484, 488 (Ind.Ct.App.2002).

> In deciding whether to issue a search warrant, the task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place. The duty of the reviewing court is to determine

---

4. The *www.westlaw.com* database and West Publishing's printed North Eastern Reporter identify the appellee in this case as the Chicago, Lake Shore & South Bend *Railway* Company, while the official Indiana Reports iden- tifies it as the Chicago, Lake Shore & South Bend *Railroad* Company. While the error would not seem to alter the meaning of the case, we will continue to exercise caution in citing to non-official authorities.

**154**

whether the magistrate had a "substantial basis" for concluding that probable cause existed. Substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. "Reviewing court" for these purposes includes both the trial court ruling on a motion to suppress and an appellate court reviewing the decision.

*Jaggers v. State*, 687 N.E.2d 180, 181–82 (Ind.1997) (citations, quotation marks, and alterations omitted).

The Fourth Amendment to the United States Constitution, which is made applicable to the states by reason of the Fourteenth Amendment, protects citizens from unreasonable searches and seizures. *Creekmore v. State*, 800 N.E.2d 230, 233 (Ind.Ct.App.2003). The Fourth Amendment demands that no search warrant be issued unless it is supported by probable cause. *Id.* Probable cause is a fluid concept, which is decided based on the facts of each case. *Id.* " 'Probable cause to search premises is established when a sufficient basis of fact exists to permit a reasonably prudent person to believe that a search of those premises will uncover evidence of a crime.' " *Id.* (quoting *Esquerdo v. State*, 640 N.E.2d 1023, 1029 (Ind.1994)). *Cheever–Ortiz v. State*, 825 N.E.2d 867, 871–72 (Ind.Ct.App.2005). "The decision to issue a warrant may be based not only upon the facts presented by the affiant, but also upon the reasonable and rational inferences that may be drawn from those facts." *Healthscript, Inc. v. State*, 724 N.E.2d 265, 271 (Ind.Ct.App.2000).

### A. Probable Cause

Scott contends that the credibility of the confidential informant ("C.I.") was not sufficiently established so as to support a determination that probable cause to search his residence existed. Indiana Code section 35–33–5–2(b) provides that

[w]hen based on hearsay, the affidavit must either:

(1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or

(2) contain information that establishes that the totality of the circumstances corroborates the hearsay.

"Probable cause to issue a search warrant cannot be supported by uncorroborated hearsay from an informant whose credibility is unknown." *Cheever–Ortiz*, 825 N.E.2d at 872. However,

the trustworthiness of hearsay for purposes of proving probable cause can be established in a number of ways, including where (1) the informant has given correct information in the past; (2) independent police investigation corroborates the informant's statements; (3) some basis for the informant's knowledge is shown; or (4) the informant predicts conduct or activities by the suspect that are not ordinarily easily predicted.

*Methene v. State*, 720 N.E.2d 384, 388 (Ind.Ct.App.1999). "Depending on the facts, other considerations may come into play in establishing the reliability of the informant or the hearsay." *Id.* (citation omitted). In this case, if the reliability of the C.I. was to be sufficiently established, it was because the totality of the circumstances tended to corroborate the hearsay under Indiana Code section 35–33–5–2(b)(2).

Although we consider this to be a close case, we conclude that the C.I.'s information was sufficiently corroborated by the totality of the circumstances, including some additional police investigation and statements from concerned citizens consistent with the C.I.'s information. The C.I. claimed that methamphetamine had been manufactured at a certain property, the directions to which the C.I. provided police, regularly over the previous two months. Police followed the directions, which led to what they knew to be Scott's residence. Deputy Saltzman averred that he had detected the odor of ether, which he knew to be used in methamphetamine manufacture, at Scott's residence within the previous two months. The police investigation, as far as it went, corroborated some details of the C.I.'s information and did not contradict it in any respect.[5]

Police also received information from a concerned citizen, who on October 10, 2006 (the date the first warrant issued), observed numerous cans of what appeared to be starting fluid and a black welding tank on Scott's property, items Deputy Saltzman knew were often used in methamphetamine manufacture. The concerned citizen had also detected the odor of ether. Finally, the concerned citizen reported that another concerned citizen had seen two men walking down a hill carrying glass jars on Scott's property, which Deputy Saltzman knew were often used in methamphetamine manufacture. In short, the concerned citizen's observations were perfectly consistent with methamphetamine manufacture occurring on Scott's property and therefore also corroborate the C.I.'s information. See Beverly v. State, 801 N.E.2d 1254, 1262 (Ind.Ct.App.2004) (concluding that several anonymous calls bore independent indicia of reliability to the extent that they were consistent).

Scott also contends that the statement of the concerned citizen bore no indicia of reliability. As previously mentioned, however, because the statement corroborated the C.I.'s statement and the results of the police investigation, the C.I.'s statement and police investigation corroborated it in return. See id. Moreover, the credibility of a concerned citizen is, as a general rule, inherently more credible than that of a "professional" C.I. See Kellems v. State, 842 N.E.2d 352, 356 (Ind.2006); Healthscript, Inc., 724 N.E.2d at 271 ("Credibility is established, for purposes of determining probable cause, if the informant was a cooperative citizen aiding in the investigation of an ongoing criminal investigation of conduct he has witnessed."); see also U.S. v. Campbell, 732 F.2d 1017, 1019 (1st Cir. 1984) ("In substitution for a track record of reliability is the fact that he was not a professional informant, but a private citizen with no known criminal record or other criminal contacts, who came forward on his own. Under such circumstances the informant's story may be more easily accepted, and we believe the magistrate justified in doing so here."). In this case, because there is no indication that the concerned citizen who came forward had any known criminal connections or ulterior reason for doing so, the judge was justified in crediting the citizen's information.

■■■ Finally, we also believe that information of a relatively recent prior conviction for a similar crime is properly considered when determining whether probable cause exists. As previously mentioned, "the task of the issuing magistrate is sim-

---

5. There is nothing in the record to explain why police did not attempt to more fully corroborate the information provided by the C.I. or the concerned citizen before seeking a search warrant, especially when the concerned citizen was apparently able to make observations without venturing onto Scott's property.

ply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Jaggers,* 687 N.E.2d at 181. We believe that a recent history of related crimes can, in some cases, contribute to the establishment of probable cause that a suspect has committed a similar crime in the present. Indeed, the Indiana Supreme Court and this court have acknowledged that a police officer's knowledge of a suspect's criminal history can contribute to a finding of probable cause to conduct a search. *See Mitchell v. State,* 745 N.E.2d 775, 785 (Ind.2001) ("Looking at the totality of the evidence contained in the affidavit, primarily upon the gun and marijuana found on Mitchell's companion, Miller, the gun observed protruding from under the driver's seat of Mitchell's car, *the general nature of Mitchell's criminal history,* and with deference to the magistrate's determination, we find a substantial basis for finding probable cause to search the car and the hotel room.") (emphasis added); *cf. State v. Litchfield,* 849 N.E.2d 170, 175 (concluding that police did not have sufficient reasonable suspicion to conduct trash pull to look for evidence of marijuana cultivation where "police did not observe the Litchfield home for excessive air conditioning or ventilation, did not observe whether window coverings hid excessive lighting, did not investigate the Litchfields' utility usage, *and did not investigate the Litchfields' criminal histories*") (emphasis added), *trans. denied.* Although it is not difficult to imagine situations where a prior conviction would not properly be part of the probable cause calculus, we do not believe that this is the case here. Under the circumstances of this case, the judge

was justified in considering a four-year-old conviction for methamphetamine manufacture at Scott's residence where the current accusations involved the same crime being committed at the same place.

We again note that we consider this to be a close case and hasten to point out that, standing alone, neither the C.I.'s hearsay statements, the police investigation, the concerned citizen's hearsay statements, nor Scott's recent history of methamphetamine manufacture at the same place would have sufficed to establish probable cause.[6] As a whole, however, the information would lead a reasonably prudent person to believe that evidence of a crime, *i.e.,* methamphetamine manufacture, would be uncovered at Scott's residence. As such, we conclude that the October 10, 2006, search warrant was supported by probable cause, and the trial court therefore did not abuse its discretion in admitting evidence discovered pursuant to its execution.

### B. Staleness

 Scott also contends that much of the information in the probable cause affidavit was stale and therefore cannot be used to establish probable cause.

"It is a fundamental principle of search and seizure law that the information given to the magistrate or judge in the application for a search warrant must be timely." *Breitweiser v. State,* 704 N.E.2d 496, 499 (Ind.Ct.App.1999) (citing *Sgro v. United States,* 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932)). Stale information gives rise to a mere suspicion and not a reasonable belief, especially when the items to be obtained in a search are easily concealed and moved.

6. Certainly, a few more paces by the police might have removed this case from the "close" call category.

*Raymer v. State,* 482 N.E.2d 253, 255 (Ind.1985). Although the age of the information supporting an application for a warrant can be a critical factor when determining the existence of probable cause, our courts have not established a bright-line rule regarding the amount of time which may elapse between obtaining the facts upon which the search warrant is based and the issuance of the warrant. *Breitweiser,* 704 N.E.2d at 499. Instead, whether the information is tainted by staleness must be determined by the facts and circumstances of each particular case. *Id.*

*Frasier v. State,* 794 N.E.2d 449, 457 (Ind. Ct.App.2003).

Specifically, Scott points to information that several officers detected the odor of ether at the property; that Deputy Saltzman had detected the odor of ether three times, the last being within the previous two months; and that he was convicted of manufacturing methamphetamine at the same property in 2002. We agree that the information concerning two of Deputy Saltzman's observations and those of officers other than Deputy Saltzman is stale. Quite simply, because none of these observations is claimed to have occurred at a particular time or within a particular time frame, we must therefore assume information regarding them is stale.

 Regarding Deputy Saltzman's averment that he had detected the odor of ether at Scott's residence within the prior two months, however, we conclude that this information is not stale. The C.I.'s information that methamphetamine manufacture had been occurring at Scott's residence regularly for the previous two months indicates an ongoing, rather than transient, operation. In light of the C.I.'s information, then, Deputy Saltzman's detection of ether fumes at Scott's property within the past two months, even though it might be stale in another context, *here* tends to corroborate the C.I.'s information and also links that information with the more recent information from the concerned citizen. *See, e.g., U.S. v. Sturmoski,* 971 F.2d 452, 457 (10th Cir.1992) ("[I]nformant # 2 had observed a methamphetamine laboratory in a garage at 237 90th Street, S.W. during the summer of 1990. Informant # 2 also stated that 'methamphetamine oil' was buried on the premises. Sturmoski contends that this information is stale and, therefore, cannot be used to corroborate the statements of the first confidential informant. We disagree. The offense in question was ongoing and continuing. Therefore, the passage of time is not of critical importance."); *see also U.S. v. Schaefer,* 87 F.3d 562, 568 (1 st Cir.1996) ("When an affidavit tendered in support of a warrant application contains information that is remote in time, a magistrate may still hold it to be adequate if it also contains sufficient recent facts corroborating the older data and linking that data to the present.").

Moreover, we note that the all indications were that Scott was manufacturing methamphetamine at his residence, where a drug manufacturing installation is more likely to be a permanent fixture, as opposed to an apartment rented by the week or a storage facility. *See Schaefer,* 87 F.3d at 568 ("Then, too, the troopers proposed to search the appellant's own barn, not a rented or appropriated facility that could easily be used and then abandoned. The target's ownership of the real estate to be searched influences the staleness calculus."). In light of the C.I.'s information that Scott was involved in ongoing methamphetamine manufacture, Deputy Saltzman's information regarding detecting the odor of ether at Scott's residence within the previous two months was not stale.

 Scott also contends that information regarding his 2002 conviction for man-

ufacturing methamphetamine at the same address was stale. Again, although the information was approximately four years old, we must disagree. It seems to us that the question of timeliness depends as much, if not more, on the nature of the information than the amount of time that has passed. In other words, the more subject the information is to speedy change, the more recent it has to be, and the more permanent and unlikely to change, the more time may pass. At the extremes, there may be types of information so ephemeral that *any* passage of time renders them stale, and others so permanent that timeliness analysis becomes far less important. We conclude that the fact of a prior criminal conviction is one of those instances where the staleness doctrine does not apply. The passage of time does not change the fact that Scott was convicted of methamphetamine manufacture in 2002, whether it be a week, or, as the case may be, approximately four years. Information regarding Scott's 2002 conviction for methamphetamine manufacture is not stale.

### Conclusion

We conclude that the probable cause affidavit was properly filed and that the associated search warrant was supported by sufficient probable cause. Moreover, we conclude that information that ether had been detected within the prior two months at Scott's residence and that he had been convicted four years previously of manufacturing methamphetamine at the same address was not stale.

The judgment of the trial court is affirmed.

BAKER, C.J., and DARDEN, J., concur.