**Otho L. LAFAYETTE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A03–0803–CR–118.

Court of Appeals of Indiana.

Jan. 23, 2009.

Transfer Granted April 23, 2009.

Mark A. Bates, Lake County Public Defender, Crown Point, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

Otho L. Lafayette appeals his convictions for class A felony rape, class B felony criminal confinement, and class C felony intimidation, as well as his repeat sexual offender status. Lafayette contends that the trial court committed reversible error in admitting the testimony of a woman he attempted to rape in 1997. We agree and therefore reverse Lafayette's convictions and remand for a new trial.

The facts most favorable to the convictions indicate that in July 2007, Gary resident C.E. met Lafayette at a gas station, and the two exchanged phone numbers. C.E. and Lafayette subsequently had several phone conversations. On the evening of July 23, 2007, Lafayette called C.E. and said that he was in her neighborhood and would like to see her. C.E. said that she was leaving work and agreed to meet Lafayette at her apartment. They met in the parking lot, and C.E. invited Lafayette into her apartment.

While chatting with C.E. in her apartment, Lafayette said that he had to work later that evening and asked her to join him for dinner. He drove her to a fast-food restaurant parking lot, where they arrived after 10:00 p.m. Lafayette said that he was not going to eat and invited C.E. to walk with him to a building across the street to check on an apartment. When she declined, he brandished a handgun and said, "Bitch, get out of the car." Tr. at 110. C.E. did not comply. Lafayette exit-

ed the car, opened C.E.'s door, and said, "Bitch, I said get the fuck out of the car." *Id.* at 111. C.E. did so and asked, "Why are you doing this?" *Id.* Lafayette said, "If you scream, if you run, I'm gonna drop you right here." *Id.*

Lafayette pointed the handgun at C.E.'s side and marched her across the street to the apartment building. Lafayette used a key to enter an apartment, where he forced C.E. to disrobe and engage in two acts of sexual intercourse. Lafayette drove C.E. back to her apartment and said, "I didn't hurt you. But if you tell the police or you tell anybody about this, I will kill you. I know where you live and Ill kill you." *Id.* at 133. C.E. entered her apartment and showered and douched because she "felt real nasty and dirty[.]" *Id.* at 134. She called her cousin about the incident.

The next morning, C.E. followed her cousin's advice and called the police. At their request, C.E. went to the emergency room for a medical examination and a rape kit, which indicated a positive match for Lafayette's DNA. C.E. gave a statement to police and identified Lafayette as her assailant in a photo lineup. On August 3, 2007, police took a statement from Lafayette, who said that he and C.E. "had sexual intercourse but it was consensual sex." State's Ex. 8. On August 8, 2007, police searched Lafayette's apartment but did not find a handgun.

The State charged Lafayette with the following eight counts: class A felony rape, class B felony rape, class B felony criminal confinement, class C felony criminal confinement, class C felony battery, class C felony intimidation, class D felony sexual battery, and class D felony criminal confinement. The State also alleged that Lafayette was a repeat sexual offender.[1]

At trial, C.E. testified to the events described above. The State then offered the testimony of E.C., whom Lafayette had been convicted of attempting to rape in 1997. The trial court admitted E.C.'s testimony over Lafayette's objection. On December 19, 2007, the jury found Lafayette guilty on the first eight counts. Lafayette then admitted to being a repeat sexual offender based on his prior attempted rape conviction. Lafayette filed a motion for a new trial, which the court denied. On February 12, 2008, the trial court entered judgment of conviction on the class A felony rape, class B felony criminal confinement, and class C felony intimidation counts and sentenced Lafayette to sixty years.

On appeal, Lafayette contends that the trial court committed reversible error in admitting E.C.'s testimony. Our standard of review is well settled:

> A trial court has broad discretion in ruling on the admissibility of evidence. The admission or exclusion of evidence will not be reversed absent a manifest abuse of discretion that results in a denial of a fair trial. An abuse of discretion occurs when the trial courts decision is clearly against the logic and effect of the facts and circumstances before the court.

*Trotter v. State,* 838 N.E.2d 553, 559 (Ind. Ct.App.2005) (citations omitted). We

---

1. *See* Ind.Code § 35–50–2–14(d) ("A person is a repeat sexual offender if the jury (if the hearing is by jury) or the court (if the hearing is to the court alone) finds that the state has proved beyond a reasonable doubt that the person had accumulated one (1) prior unrelated felony conviction under IC 35–42–4–1 [rape] through IC 35–42–4–9 or IC 35–46–1–3 . . . ."); Ind.Code § 35–50–2–14(e) ("The court may sentence a person found to be a repeat sexual offender to an additional fixed term that is the advisory sentence for the underlying offense. However, the additional sentence may not exceed ten (10) years.").

"may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court. We do not reweigh the evidence, and consider the evidence most favorable to the trial court's ruling." *Scott v. State*, 883 N.E.2d 147, 152 (Ind.Ct.App.2008) (citation omitted).

The trial court admitted E.C.'s testimony pursuant to Indiana Evidence Rule 404(b), which states,

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

According to our supreme court, Indiana Evidence Rule 404(b) "is designed to prevent the jury from assessing a defendant's present guilt on the basis of his past propensities, the so called 'forbidden inference.' Prior actions may be admissible to show motive, intent, or other proper purpose. The list of other purposes is illustrative not exhaustive." *Hicks v. State*, 690 N.E.2d 215, 218–19 (Ind.1997).

In an opinion issued shortly before the Indiana Rules of Evidence became effective in January 1994, our supreme court sought to provide guidance regarding the so-called intent exception of Evidence Rule 404(b). *Wickizer v. State*, 626 N.E.2d 795 (Ind.1993). The court stated,

> Mindful of the variety of judicial perspectives regarding the proper role of prior conduct evidence in the ascertainment of truth, we conclude that Indiana is best served by a narrow construction of the intent exception in Evid. R. 404(b). It does not authorize the general use of prior conduct evidence as proof of the general or specific intent element in criminal offenses. To allow the introduction of prior conduct evidence upon this basis would be to permit the intent exception to routinely overcome the rule's otherwise emphatic prohibition against the admissibility of other crimes, wrongs, or acts to prove the character of a person in order to show action in conformity therewith. In this context, admission of prior bad acts would frequently produce the "forbidden inference" cautioned against in *Hardin*, 611 N.E.2d at 129.

> The intent exception in Evid. R. 404(b) will be available when a defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of particular contrary intent. When a defendant alleges in trial a particular contrary intent, whether in opening statement, by cross-examination of the State's witnesses, or by presentation of his own case-in-chief, the State may respond by offering evidence of prior crimes, wrongs, or acts to the extent genuinely relevant to prove the defendant's intent at the time of the charged offense. The trial court must then determine whether to admit or exclude such evidence depending upon whether "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Evid. R. 403.

*Id.* at 799 (citation to record omitted).

Subsequently, in *Hicks*, 690 N.E.2d 215, the court enunciated an all-encompassing standard for assessing the admissibility of

evidence pursuant to Indiana Evidence Rule 404(b):

(1) the court must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) the court must balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403.[2] When inquiring into relevance, the court may consider any factor it would ordinarily consider under Rule 402.[3] These may include the similarity and proximity in time of the prior bad act to the charged conduct, and will presumably typically include tying the act to the defendant. But these factors are simply illustrative of the many aspects that may, depending on the context, be required to show relevance.

*Id.* at 221 (footnote omitted).

■ We now turn our attention to Lafayette's case. The State offered E.C.'s testimony in connection with the two rape charges. The Indiana Code defines rape in pertinent part as follows:

(a) Except as provided in subsection (b), a person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when:

(1) the other person is compelled by force or imminent threat of force

. . .

commits rape, a Class B felony.

(b) An offense described in subsection (a) is a Class A felony if:

(1) if it committed by using or threatening the use of deadly force. . . .

Ind.Code § 35–42–4–1.[4]

In its pretrial memorandum in support *of its motion to introduce Rule 404(b) evidence*, the State asserted,

In the instant case the State believes the Defendant will attempt to introduce evidence that the victim had consensual intercourse with the Defendant. Once the Defendant puts his intent at issue, the State, under the Rules, should be allowed to put on evidence of the Defendants prior conviction[ ] for Rape.

Appellant's App. at 32. In its amended pretrial memorandum, the State suggested that Lafayette put his intent at issue when he gave his statement to the police and therefore "[t]he State should be allowed to use 404(b) evidence to show a contrary intent." *Id.* at 52.

Lafayette filed a motion to exclude that evidence. At a hearing on the motion,

2. *See* Ind. Evidence Rule 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."); *see also Hicks*, 690 N.E.2d at 221 n. 10 ("Prejudice is the normal countervailing factor. Rule 403 lists others—confusion of the issues, misleading the jury, undue delay, and the needless presentation of cumulative evidence. The conventional situation presented in 404(b) cases—and in this case—is the danger of unfair prejudice posed by the other crime, wrong, or act. We do not, however, preclude a 404(b) challenge under the balancing prong on the other factors listed in Rule 403.").

3. *See* Ind. Evidence Rule 402 ("All relevant evidence is admissible, except as otherwise provided by the United States or Indiana constitutions, by statute not in conflict with these rules, by these rules or by other rules applicable in the courts of this State. Evidence which is not relevant is not admissible.").

4. Rape is also a class A felony if "it is committed while armed with a deadly weapon." Ind.Code § 35–42–4–1(b)(2). C.E. testified that Lafayette possessed a handgun on the night in question, but the class A felony rape charge is based solely on his use or threatened use of deadly force. *See* Appellants App. at 10 (charging information).

Lafayette's counsel argued that for purposes of Evidence Rule 404(b), a criminal defendant's statement could not put intent at issue prior to trial because "that would enable the State to open the door any time they wanted to [with] a prior statement." Hearing Tr. at 7. The trial court took the matter under advisement.

At trial, the court admitted Lafayette's statement to the police over Lafayette's objection.[5] The court then held a hearing regarding the admissibility of E.C.'s testimony. The State argued that Lafayette had placed his intent at issue when he made his statement to the police and when he explored the issue of a rape victim's credibility during voir dire and in his opening statement. Lafayette's counsel responded in pertinent part as follows:

> Once again, there [are] two sides to this. There is our contention that Mr. Lafayette had the consent of [C.E.] to have sex with him. But that is not what I'm attacking, I'm attacking what the State has to prove, lack of consent. And if you would review the evidence in this case, the only witness, the only source of lack of consent comes from [C.E.] Therefore, her credibility is at issue, any time that the State puts a witness on the stand their credibility is in issue. And I have an obligation to point out, on behalf of my client to the jury, those places in the record, where her credibility should be reviewed.

Tr. at 257–58. Lafayette's counsel further argued that *Wickizer*

> doesn't say . . . that the State can take a pretrial statement of the defendant, made before the trial, before charges are even filed and use those as a predicate to open the 404(b) door. It does

not say that. That is the one reason [the State] wants to get it in.

*Id.* at 262–63.

The trial court ruled as follows:

> All right, an essential element of the charge of rape is really a lack of consent because if sexual intercourse is consensual, it is not rape. Where the State of Indiana would like to get into 404(b) evidence under the intent exception, it is necessary for the defendant to affirmatively present a claim of contrary intent. When a defendant merely denies the allegations and does not put forth a particular contrary intent, 404(b) evidence is not admissible. The question before the Court is whether or not the defendant has placed his intent in issue. This Court concludes that the defendant has placed his intent in issue and has gone beyond merely claiming a—beyond merely denying the charges. The comments in questioning during the jury selection and the cross-examination of [C.E.] go beyond merely denying the allegations and are an attempt at discrediting her in such a way that you cannot believe her and since you therefore, cannot believe her, she in fact did consent or if she did not consent, then there is at least reasonable doubt as to whether or not she had consented.
>
> . . . .
>
> That is the tone of the defense. The Court is well aware of the fact that under *Wickizer*, a narrow construction must in fact be used in the State of Indiana.
>
> The next question becomes whether or not this is relevant evidence. Relevance, under [Evidence Rule] 401 is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the

---

**5.** Lafayette does not challenge the admissibili-  ty of this statement on appeal.

action more probable or less probable than it would be without the evidence. In this particular case, "consent". The 404 evidence that the State seeks to get into under the intent exception, clearly would give the jury other evidence to consider on whether or not the defendant formed the requisite intent to have sex with [C.E.] against her will.

The third prong of the test requires that prior misconduct evidence be such that a reasonable jury could find that the act did occur and that the defendant committed the act. Based on past arguments by the State of Indiana, I conclude that the test has been met and the last prong of the analysis requires the Court to go and make a 403 analysis as to whether or not the evidence['s] probative value is not substantially outweighed by the danger of unfair prejudice. The probative value in this case is whether or not the sex that was had was consensual.

The 404(b) evidence that the State seeks to introduce is probative of the issue of intent and the danger of unfair prejudice if any, is outweighed by the probative value on the issue of consent, which is as the case is developing the single and only issue, only significant issue, as to the rape charge in Count I and Count II.

Therefore, in summary, the defendant has claimed a particular contrary intent, through jury questioning and cross-ex-

amination even before the State introduced the defendant's statement and before that was admitted into evidence. Therefore, the State will be permitted to get into 404(b) evidence.

*Id.* at 264–68.[6] The State then called E.C. to the witness stand and elicited testimony regarding Lafayette's attempt to rape her in 1997.

We commend the trial court on the thoroughness and thoughtfulness of its evidentiary ruling, but we respectfully disagree with it in several crucial respects. First, we believe that a criminal defendant does not put his intent at issue at any stage of the proceedings simply by questioning the victim's credibility, which itself is at issue in nearly every case.[7]

Next, we believe that by asserting that an alleged rape victim consented to sexual intercourse, a criminal defendant does not present a claim of particular contrary intent for purposes of Evidence Rule 404(b). As the rape statute indicates, a criminal defendant's intent to have sexual intercourse with an alleged victim and the victim's consent to the sexual intercourse are separate and discrete elements of the crime and therefore are separate and discrete issues for purposes of Evidence Rule 404(b). *See* Ind.Code § 35–42–4–1(a) (defining rape as knowingly or intentionally having sexual intercourse with a member of the opposite sex when "the other person is compelled by force or imminent threat of force"). Here, Lafayette admitted to

---

6. Lafayette also objected to E.C.s testimony regarding the 1997 attempted rape based on the temporal remoteness of the offense. Because we conclude that E.C.s testimony is inadmissible on other grounds, we do not address that issue.

7. In *Wickizer*, the court stated, "When a defendant alleges in trial a particular contrary intent, whether in opening statement, by cross-examination of the States witnesses, or by presentation of his own case-in-chief, the

State may respond by offering evidence of prior crimes, wrongs, or acts to the extent genuinely relevant to prove the defendants intent at the time of the charged offense." 626 N.E.2d at 799. We express no opinion as to whether a defendant may allege a particular contrary intent prior to his opening statement or even prior to trial, such as by giving a statement to police, raising an insanity defense, or questioning jurors during voir dire.

having sexual intercourse with C.E.; thus, he did not present a claim of particular contrary intent for purposes of Evidence Rule 404(b). As such, the trial court abused its discretion in admitting E.C.'s testimony on that basis.

■ The question then becomes whether E.C.'s testimony was admissible to prove that C.E. consented to having sexual intercourse with Lafayette. Based on pre-Rule 404(b) supreme court precedent, we conclude that it was not. In *Meeks v. State*, 249 Ind. 659, 234 N.E.2d 629 (1968), our supreme court held that the trial court committed reversible error in admitting evidence regarding the defendant's prior rape of another woman, where the victim's consent was the only issue at trial. *See id.* at 664, 234 N.E.2d at 632 ("Such evidence must be relevant to some point at issue, and in the case at bar, with consent being the only element at issue, the other alleged rape was irrelevant."). In *Malone v. State*, 441 N.E.2d 1339 (Ind.1982), the court held that the trial court committed reversible error in admitting evidence regarding the defendant's subsequent rape of another woman. The court stated, "We now reaffirm *Meeks* as it applies to rape cases where consent is the only issue. The fact that one woman was raped has no tendency to prove that another woman did not consent." *Id.* at 1347. The court further observed that

> the only issue properly before the jury was whether or not Malone forcibly induced [the victim] to engage in sexual intercourse without [the victim's] consent. In such a case with no eyewitnesses and with each party propounding a conflicting story, the relative credibility of the prosecutrix versus the defendant is likely to be the determinative

factor with the jury. This is especially probable when the circumstantial evidence can clearly support either party's account. Under these conditions, the jury must be carefully protected from all irrelevant evidence which is offered solely to reflect unfavorably upon the defendant's general moral character.

*Id.* at 1348. Finally, in *Jenkins v. State*, 474 N.E.2d 84 (Ind.1985), the court reaffirmed both *Meeks* and *Malone* and reversed the defendant's rape and robbery convictions based on the erroneous admission of evidence regarding his subsequent rape of another woman, where the victim's consent was the only issue at trial. *See also Jackson v. State*, 597 N.E.2d 989, 991 (Ind.Ct.App.1992) (reversing defendant's rape and criminal deviate conduct convictions based on admission of evidence of prior rape, where consent was only issue at trial; "In a case of rape, where consent is the only issue, prior incidents of rape may not be placed in evidence.") (citing, *inter alia, Jenkins* ).

Here, because Lafayette admitted to having sexual intercourse with C.E., the only issue that bore any relation to E.C.'s testimony was whether C.E. had consented to the intercourse.[8] Again, "[t]he fact that one woman was raped has no tendency to prove that another woman did not consent." *Malone*, 441 N.E.2d at 1347. Consequently, E.C.'s testimony would not be admissible under Evidence Rule 402, let alone under Evidence Rule 404(b), to prove that C.E. did not consent to having sexual intercourse with Lafayette. See Ind. Evidence Rule 401 (defining "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than

8. At trial, the State asserted that E.C.'s testimony was relevant to establish Lafayette's identity as C.E.'s attacker. Because Lafayette admitted to having sexual intercourse with C.E., his identity was not at issue.

it would be without the evidence."); Ind. Evidence Rule 402 ("Evidence which is not relevant is not admissible."). Thus, the trial court abused its discretion in admitting E.C.s testimony on that basis as well.

"[I]n some instances the erroneous admission of evidence is harmless. Errors in the admission of evidence will not result in reversal if the probable impact of the evidence upon the jury is sufficiently minor so as to not affect a party's substantial rights." *Collins v. State*, 826 N.E.2d 671, 679 (Ind.Ct.App.2005), trans. denied. Here, no one witnessed any of the charged crimes. The doctor who examined C.E. acknowledged that the abrasions he observed in her genital area were consistent with either sexual assault or "rough sex," as well as with nonsexual activity such as wearing "particular clothing or something or sitting on something[.]" Tr. at 361. Police searched Lafayette's apartment and did not find a handgun, which C.E. claimed he possessed on the night in question. Lafayette told police that C.E. consented to having sexual intercourse; C.E. testified that she did not. Thus, the issue of consent—indeed, the issue of whether Lafayette committed any crimes at all—hinged solely on the credibility of C.E. and Lafayette. Based on the foregoing, we find it extremely likely that E.C.'s testimony prejudicially impacted the jury and contributed to the guilty verdict. Therefore, we reverse Lafayette's convictions and remand for a new trial.[9]

Reversed and remanded.

KIRSCH, J., concurs in result with separate opinion.

VAIDIK, J., dissents with separate opinion.

9. Because we reverse on this issue, we need not address the merits of Lafayette's claim that the prosecutor committed misconduct

KIRSCH, Judge, concurring in result.

I concur in the decision to reverse Lafayette's convictions, but I reach that conclusion by a different route than that set forth in Judge Crone's lead opinion. I disagree with the conclusion that a criminal defendant does not put his intent at issue by asserting that an alleged rape victim consented to the sexual intercourse, but I do not believe that Lafayette made any such assertion at trial and, accordingly, did not put his intent in issue. In challenging the credibility of the prosecuting witness on her claim that the sexual intercourse was forced, Lafayette made no affirmative claim that the sexual intercourse was consensual. Had he done so, I believe it would have opened the door to the challenged testimony of the prior bad acts.

VAIDIK, Judge, dissenting.

I respectfully dissent. First, I disagree with the lead and concurring in result opinions because I believe that the trial court correctly concluded that Otho Lafayette put his intent at issue during trial. Second, I believe that the evidence of Lafayette's previous attempted rape was relevant. Therefore, I would hold that the trial court properly admitted testimony regarding Lafayette's prior bad act, address Lafayette's remaining claim of error, and affirm Lafayette's convictions.

In order to convict Lafayette of Class A felony rape, the State had to prove that he "ha[d] sexual intercourse with a member of the opposite sex when ... the other person [wa]s compelled by force or threat of force" and that the offense was "committed by using or threatening the use of deadly force." Ind.Code § 35–42–4–1.

during closing argument by commenting on his decision not to testify.

Evidence Rule 404(b) provides that, while evidence of a defendant's prior bad acts is generally inadmissible during a trial for an unrelated offense, this evidence may be admissible if the State wishes to introduce it as "proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ind. Evidence Rule 404(b). Because Lafayette admits that he had sexual intercourse with the victim, the relevant intent in this case is Lafayette's intent to use or threaten force. *Johnson v. State,* 722 N.E.2d 382, 384 (Ind.Ct.App. 2000). With this in mind, the trial court allowed the State to introduce evidence that in 1997 Lafayette was convicted of attempted rape after he tried to rape a woman at gunpoint and later claimed that his sexual encounter with the victim was consensual. Citing Evidence Rule 404(b), the trial court permitted this evidence as proof of Lafayette's intent relating to his conduct in the instant case.

Lafayette contends that he did not place the victim's consent at issue. We have previously determined that, where a defendant in a rape case alleges that intercourse was consensual, the defendant has placed his or her contrary intent at issue for the purpose of Evidence Rule 404(b). *Johnson,* 722 N.E.2d at 384; *see also Udarbe v. State,* 749 N.E.2d 562, 566 (Ind.Ct.App. 2001) (citing *Johnson* with approval). Lafayette argues that instead of "bringing consent up," 12/13/07 Tr. p. 11,[10] he challenged the victim's credibility to "attack[ ] what the State had to prove, lack of consent," Appellants Br. p. 10, and that this is somehow different from placing the victim's consent at issue. *See* Tr. p. 156–57 ("[Defense]: It is relevant to the issue of her credibility maintaining lack of consent. [State]: So you are attacking consent?

[Defense]: No, it's your element of proof I'm attacking. [State]: So you're collaterally attacking consent without saying the word? [Defense]: No. [State]: Uh-huh."). Despite defense counsel's avoidance of the terms "consent" or "consensual" during trial, a review of the trial transcript makes it apparent that Lafayette did indeed place his own contrary intent, i.e., the victim's consent, at issue. During the defense's opening argument, defense counsel told the jury about the budding relationship between Lafayette and the victim, *id.* at 82, but he questioned the victim's claim that Lafayette used force against her to facilitate sexual intercourse, *id.* ("The incident about being pushed or falling, if you see the medical evidence and when you have a chance to listen to the doctor, there is no evidence of any wounds...."). Later, during cross-examination of the victim, defense counsel compelled the victim to admit that there was no physical corroboration of her account of the force that Lafayette used against her, *id.* at 188 ("So there is no corroboration that you fell? No physical evidence that you fell?"), and challenged the victim's account of her response to Lafayette's use of force and threat of force with a gun, *id.* at 189–92. Only after Lafayette placed his contrary intent at issue before the jury during opening argument and cross-examination of the victim did the trial court admit evidence regarding Lafayette's prior attempted rape conviction. *Id.* at 264–68.

Lafayette's claim that he did not raise the issue of consent is further belied by statements made by defense counsel before and during trial. First, during a pretrial hearing regarding the State's 404(b) motion, the following exchange took place:

---

10. Citations to the transcripts of pretrial hearings include the date of the hearing. Citations to the trial transcript are merely to "Tr."

THE COURT: What is the defense in this case?

[DEFENSE]: It's insufficiency of evidence, Your Honor.

THE COURT: It's not consent?

[DEFENSE]: I can't raise consent. If I raise consent as a defense, that opens the door to 404(b) evidence.

[STATE]: He's just tap dancing around the issue, Judge. Insufficiency of evidence is one of three things in a rape case: I did'nt do it, sex never happened, or there was consent. That's what a rape case is, and by saying insufficiency of evidence, all he's doing is tap dancing around the issue, that *he's actually raising it as consent so he can avoid the 404(b) trigger.*

[DEFENSE]: *Exactly.*

[STATE]: That's all he's doing.

[DEFENSE]: *Exactly.*

[STATE]: And he can't do that. You can't just say insufficiency of evidence and go, "Well, just because I did'nt say the word consent, it does'nt mean consent."

\* \* \* \* \* \*

[DEFENSE]: You know, I am dancing, absolutely, because I know what counsel knows; if we mention the word consent under [the case law], then [the State] can bring in 404(b) evidence. *We are dancing, absolutely.*

12/11/07 Tr. p. 8–9 (emphasis added). Further, during trial, defense counsel made the following remark outside of the presence of the jury: "Your Honor, what is this all about? They had sex, *it is whether or not it was consensual.*" Tr. p. 154 (emphasis added). Finally, during closing argument, defense counsel yet again expressed Lafayette's disagreement with the victim's characterization of the sexual intercourse as nonconsensual: "That is another reason why I think this

was consensual intercourse where the victim changed her mind." *Id.* at 480.

Defense counsel's comments during his opening statement questioning the victim's account of the force used by Lafayette to compel intercourse with her, and the defense's cross-examination of the victim in such a way as to put at issue her account of the sexual encounter as nonconsensual, placed Lafayette's contrary intent at issue during trial. This is further evidenced by comments made by defense counsel during a pretrial hearing, during trial (but outside of the presence of the jury), and during closing argument. Thus, pursuant to Evidence Rule 404(b), the State was not precluded from introducing evidence of Lafayette's prior bad act as proof of Lafayette's intent.

Further, I disagree with the majority's conclusion that evidence of Lafayette's prior bad act is irrelevant to the question of intent to engage in nonconsensual intercourse and therefore also inadmissible under Indiana Evidence Rule 402. *See* op. p. 743 (" '[t]he fact that one woman was raped has no tendency to prove that another woman did not consent' ") (quoting *Malone v. State,* 441 N.E.2d 1339, 1347 (Ind. 1982)). The evidence presented by the State regarding the 1997 attempted rape, however, was not simply that Lafayette attempted to rape a woman in the past. Rather, it revealed conduct nearly identical to the offenses that led to Lafayette's latest convictions. E.C. testified that in 1997, when she was forty-three or forty-four years old, she met Lafayette, who was a stranger to her, at a gas station. Tr. p. 283–84. Lafayette approached her and struck up a polite conversation. *Id.* at 285–86. Lafayette lied to E.C. about his name and occupation and traded telephone numbers with her. *Id.* at 286–87. He called her that night and made arrangements to pick her up the following day to

purportedly look at automobiles that he sold. *Id.* at 287–90. The next day, instead of taking E.C. to a car lot, Lafayette drove her to an apartment building and ordered her to get out of his car. *Id.* at 297–98. Once inside an apartment, Lafayette forced E.C.'s pants down and unsuccessfully tried to remove her underwear. *Id.* at 301–02. While E.C. fought, Lafayette "started talking to [her] about [E.C.] and him and a relationship ... some story about [E.C. and Lafayette] being in a relationship[.]" *Id.* at 301. He also instructed her to "raise up [her] legs against his chest and stop fighting." *Id.* at 303. E.C. testified that Lafayette eventually gave up trying to have sexual intercourse with her, threw her down, and threatened to kill her and her relatives. *Id.* at 305–06. Lafayette then admired himself in the mirror, explained to E.C. how he styled his hair, talked to her about relationships, and compelled her to eat cake with him. *Id.* at 307–08. When Lafayette finally drove E.C. home, he spoke to her as though the two of them were involved in a romantic relationship, gave her a rose, and said that he wanted to see her again. *Id.* at 309–10.

With striking similarity, in the case before us today, Lafayette approached C.E., a woman in her late forties, at a gas station. *Id.* at 85–86. He struck up a conversation, lied about his name, and traded telephone numbers with her. *Id.* at 87–89. He called her that night. *Id.* at 91. Later that month, Lafayette visited C.E. at her home and then convinced her to join him for a meal at a restaurant. *Id.* at 105. With C.E. as a passenger in his car, Lafayette did not take her to a restaurant. Instead, he brandished a handgun and compelled C.E. into an apartment. *Id.* at 110–14. Once inside the apartment,

Lafayette, still holding the gun, pushed C.E. onto a bed and forced her to remove her pants. *Id.* at 123. He ordered her to "lift [her] legs up" and compelled her to submit to sexual intercourse twice. *Id.* at 125–28. Afterward, while driving her home, Lafayette threatened to kill C.E. if she told anyone what happened. *Id.* at 133. Later that night, Lafayette called C.E. twice and left a voicemail, which C.E. recounted as follows:

> He said that I was a good woman and I was a nice, descent [sic] woman, he could love a woman like me if I can get pas[t] this, he would be a good man to me and he could help me with a lot of things and he could really love me and be good to me because he can see I was a good woman.

*Id.* at 134–35. Given the uncanny similarities in Lafayette's conduct toward C.E. and E.C.—before, during, and after his assaults upon them—I must disagree with the majority's conclusion that the evidence presented through E.C.'s testimony is irrelevant.[11] Further, in my view, the highly probative nature of this evidence outweighs its prejudicial effect, and it is therefore admissible. Ind. Evidence Rule 403; *Wilson v. State,* 765 N.E.2d 1265, 1270 (Ind.2002).

In conclusion, I believe that Lafayette sufficiently placed his intent at issue to allow the State to present evidence of his prior bad act pursuant to Indiana Evidence Rule 404(b). Further, I believe that the evidence of his 1997 attempted rape of another victim is relevant to the case before us. Therefore, I would hold that the trial court properly admitted testimony regarding Lafayette's prior bad act, address

---

11. Given the similarities between Lafayette's present offenses and his prior bad act, I believe that the evidence of his 1997 offense was also admissible under Indiana Evidence Rule 404(b) as evidence of a common plan or scheme.

Lafayette's remaining claim of error, and affirm Lafayette's convictions.