**James H. HELTON, Jr., Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

**No. 20A04–0710–PC–589.**

Court of Appeals of Indiana.

May 16, 2008.

---

tive assistance of trial counsel. We hold that Helton's trial counsel was ineffective as a matter of law.

We reverse.[1]

## FACTS AND PROCEDURAL HISTORY

On August 26, 2002, Elkhart County Sheriff's Lieutenant R.D. Drinkwine issued an affidavit seeking a search warrant for Helton's residence. In that affidavit, Lieutenant Drinkwine stated that a confidential informant ("CI") told him that he had observed at Helton's residence large amounts of methamphetamine, several firearms, and Helton dealing methamphetamine. In the affidavit, Lieutenant Drinkwine also stated that Helton had prior drug-related convictions in 1985, 1988, and 1989 and that the Sheriff's Department had received two anonymous tips since May 2002 that Helton was dealing methamphetamine.

Lieutenant Drinkwine obtained and executed a search warrant the same day, and officers found a total of 406 grams of methamphetamine and 66 grams of marijuana at Helton's residence, among other dealing-related items. The State charged Helton with Possession of Methamphetamine with Intent to Deliver, as a Class A felony, and Possession of a Controlled Substance, as a Class D felony. The trial court appointed a public defender to represent Helton at trial.

Following the first day of trial, during which no evidence obtained pursuant to the search warrant was offered into evidence, Helton pleaded guilty to possession of methamphetamine with intent to deliver, as a Class A felony, and the State agreed to dismiss the possession charge.

Susan K. Carpenter, Public Defender of Indiana, Jonathan O. Chenoweth, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

James Helton, Jr. was convicted of Possession of Methamphetamine with Intent to Deliver, as a Class A felony, pursuant to a guilty plea. Helton subsequently petitioned for post-conviction relief, which the post-conviction court denied. On appeal, he presents a single issue for our review, namely, whether he was denied the effec-

1. We heard oral argument in this case on April 22, 2008, at Springs Valley Junior/Senior High School in French Lick. We thank Orange Circuit Court Judge Larry Blanton and school officials for their hospitality.

The trial court accepted the plea agreement, entered judgment accordingly, and sentenced Helton to forty-five years. Helton did not take a direct appeal.

Helton filed an amended petition for post-conviction relief in February 2007, alleging in relevant part that he was denied the effective assistance of trial counsel. In particular, Helton alleged that the August 26, 2002, search warrant was invalid and that his trial counsel was ineffective when he did not file a motion to suppress the evidence obtained pursuant to the warrant. Following a hearing, the post-conviction court denied his petition. This appeal ensued.

## DISCUSSION AND DECISION

■ The petitioner bears the burden of establishing his grounds for post-conviction relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *Harrison v. State*, 707 N.E.2d 767, 773 (Ind.1999), *cert. denied*, 529 U.S. 1088, 120 S.Ct. 1722, 146 L.Ed.2d 643 (2000). To the extent the post-conviction court denied relief in the instant case, Helton appeals from a negative judgment and faces the rigorous burden of showing that the evidence as a whole " 'leads unerringly and unmistakably to a conclusion opposite to that reached by the [ ] court.' " *See Williams v. State*, 706 N.E.2d 149, 153 (Ind.1999) (quoting *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind.1993)), *cert. denied*, 529 U.S. 1113, 120 S.Ct. 1970, 146 L.Ed.2d 800 (2000). It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law. *Bivins v. State*, 735 N.E.2d 1116, 1121 (Ind.2000).

There is a strong presumption that counsel rendered effective assistance and made all significant decisions in the exercise of reasonable professional judgment, and the burden falls on the defendant to overcome that presumption. *Gibson v. State*, 709 N.E.2d 11, 13 (Ind.Ct.App.1999), *trans. denied*. To make a successful ineffective assistance claim, a defendant must show that: (1) his attorney's performance fell below an objective standard of reasonableness as determined by prevailing professional norms; and (2) the lack of reasonable representation prejudiced him. *Mays v. State*, 719 N.E.2d 1263, 1265 (Ind. Ct.App.1999) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)), *trans. denied*. Even if a defendant establishes that his attorney's acts or omissions were outside the wide range of competent professional assistance, he must also establish that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *See Steele v. State*, 536 N.E.2d 292, 293 (Ind.1989). A defendant who pleads guilty must show a reasonable probability of acquittal in order to prevail in a post-conviction attack on the conviction based on a claim of ineffective assistance of counsel. *Segura v. State*, 749 N.E.2d 496, 503 (Ind.2001).

Here, Helton contends that, had his trial counsel filed a pre-trial motion to suppress the evidence obtained pursuant to the search warrant, the trial court would have granted that motion, he would not have pleaded guilty, and the State would not have had sufficient evidence to convict him. In support of that contention, Helton asserts that the search warrant affidavit was not supported by probable cause because it was based on uncorroborated hearsay from a source whose credibility was unknown. We must agree.

■ In *Newby v. State*, 701 N.E.2d 593, 597–98 (Ind.Ct.App.1998), this court set out the law on the issue presented here:

In determining whether to issue a search warrant, " '[t]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *Jaggers v. State*, 687 N.E.2d 180, 181 (Ind.1997) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). When reviewing a magistrate's decision to issue a warrant, the reviewing court applies a deferential standard. *Lloyd v. State*, 677 N.E.2d 71, 73 (Ind.Ct.App.1997), *trans. denied.* We will affirm the magistrate's decision to issue the warrant if the magistrate had a "substantial basis" for concluding that probable cause to search existed. *Id.* "Substantial basis" requires us to focus on whether the reasonable inferences drawn from the totality of the evidence support the probable cause determination. *Jaggers*, 687 N.E.2d at 181–82.

The United States Supreme Court has held that *uncorroborated hearsay from a source whose credibility is itself unknown, standing alone, cannot support a finding of probable cause to issue a search warrant. Gates*, 462 U.S. at 227, 103 S.Ct. 2317. The federal test for ensuring the reliability of a hearsay statement in a probable cause determination allows the use of hearsay only if the totality of the circumstances corroborates the hearsay. *Lloyd*, 677 N.E.2d at 74 (citing *Gates*, 462 U.S. at 230–31, 103 S.Ct. 2317). The reliability of hearsay can be established in a number of ways, including where: (1) the informant has given correct information in the past, (2) independent police investigation corroborates the informant's statements, (3) some basis for the informant's knowledge is demonstrated, or (4) the infor-

mant predicts conduct or activities by the suspect that are not ordinarily easily predicted. *Jaggers*, 687 N.E.2d at 182.

Further, Indiana Code Section 35–33–5–2(b) provides: When based on hearsay, the affidavit must either:

(1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or

(2) contain information that establishes that the totality of the circumstances corroborates the hearsay.

(Emphasis added).

Here, the probable cause affidavit provides in relevant part:

3) That [on August 26, 2002, the CI] gave information, in a written statement, that James Howard Helton is selling methamphetamine from a house located at 2327 S. Main St. Elkhart, Indiana.

4) That [the CI] has known James Howard Helton for more than 15 years and [has known] him to sell illegal drugs for that entire time.

\* \* \*

8) That [the CI] saw what he described as a "pound of meth", a triple-beam scale, several syringes, two or three police scanners, a police code book, a video monitor that receives images from outside the residence Saturday, August 24, 2002 when he visited the residence at 2327 S. Main St. Elkhart, IN, all of which the affiant recognizes as items used to facilitate the sale of illegal drugs.

\* \* \*

11) That [the CI] observed James Howard Helton sell two "8–balls" of metham-

phetamine for $100.00 each while at the residence, on August 24, 2002.

12) That the affiant confirmed that James Howard Helton was convicted on 1–9–89 for Possession of Cocaine, a Class D Felony. This information was confirmed by a NCIC inquiry.

13) That the affiant was involved in the arrest of James Howard Helton, on 12–20–85 for Dealing Cocaine, by the Elkhart Police Department.

14) That James Howard Helton was arrested on 2–12–88, by the Elkhart Police Department for Possession of Narcotic Drug.

\* \* \*

16) That the Elkhart County Drug Task Force has received two anonymous citizen complaints since May 2002, that state James Howard Helton is selling methamphetamine and in possession of firearms.

17) That [the CI] gave the affiant a detailed description of the residence, including the interior floor plan. That the affiant was able to confirm the description of the residence visually.

Volume of Exhibits, Exhibit 1.

Helton contends, and we agree, that Lieutenant Drinkwine's affidavit was based on uncorroborated hearsay. There is no indication that the CI has given correct information in the past and, thus, as in *Jaggers*, the informant's credibility was entirely unknown. *See Jaggers*, 687 N.E.2d at 182. While Lieutenant Drinkwine attempted to corroborate the information by "confirm[ing] the [CI's] description of the residence visually," that observation did not corroborate that the residence contained evidence of a crime. *See id.* This court has held that "[t]he confirmation of 'easily obtained facts and conditions existing at the time of the tip' is insufficient to establish an informant's

credibility." *See Newby*, 701 N.E.2d at 601 (quoting *Gates*, 462 U.S. at 245, 103 S.Ct. 2317). Finally, the State did not demonstrate any basis for the CI's knowledge, and the CI did not predict conduct or activities by the suspect that are not ordinarily easily predicted. *See id.* at 598.

Another panel of this Court recently held that a search warrant affidavit was properly supported by probable cause under a similar set of circumstances. In *Scott v. State*, 883 N.E.2d 147 (Ind.Ct.App. 2008), the defendant moved to suppress evidence obtained pursuant to a search warrant alleging that the probable cause affidavit was based upon a C.I.'s uncorroborated hearsay. On appeal, we held that it was a "close case," but that the C.I.'s information was sufficiently corroborated by the totality of the circumstances. *Id.* at 155. In particular, the evidence showed that: the C.I. claimed that the defendant had been manufacturing methamphetamine "regularly over the previous two months;" a police officer had detected the odor of ether at the residence within the previous two months; a "concerned citizen" reported activity suggesting methamphetamine manufacturing at the residence; and the defendant had been convicted of methamphetamine manufacturing in 2002. *Id.* We reiterated that we considered it a close case, and "hasten[ed] to point out that, standing alone, neither the C.I.'s hearsay statements, the police investigation, the concerned citizen's hearsay statements, nor Scott's recent history of methamphetamine manufacture at the same place would have sufficed to establish probable cause." *Id.* at 156.

Here, in contrast, the totality of the circumstances does not support a finding of probable cause. In an effort to corroborate the C.I.'s information, Lieutenant Drinkwine determined that Helton had

been arrested in the 1980s on charges related to cocaine and a "narcotic drug." And Lieutenant Drinkwine stated that two anonymous citizen complaints had been lodged against Helton since May 2002 alleging methamphetamine dealing and possession of firearms.[2] Finally, Lieutenant Drinkwine confirmed the description of Helton's residence that the C.I. had given him, but that information was readily available to anyone who could observe the house. In *Scott*, however, officers smelled the odor of ether at the defendant's residence during the time that the C.I. claimed he had been manufacturing methamphetamine. And we held that "because the statement [of the concerned citizen] corroborated the C.I.'s statement and the results of the police investigation, the C.I.'s statement and police investigation corroborated it in return." *Id.* at 155. But here, we do not have any corroboration of either the anonymous citizen complaint or the C.I.'s information. As such, *Scott* is readily distinguishable from this case.

In sum, the determination of probable cause in this case lacked a substantial basis. *See Jaggers*, 687 N.E.2d at 181 (holding duty of reviewing court is to determine whether magistrate had a "substantial basis" for concluding that probable cause existed). As such, had Helton's trial counsel moved to suppress the evidence obtained pursuant to the warrant, the trial court would have been compelled to grant that motion.[3] Helton has demonstrated that he would not have pleaded guilty had his trial counsel filed a motion to suppress the evidence. And without the evidence obtained pursuant to the search warrant, the State did not have sufficient evidence to convict Helton on the charges.

■ The State maintains, however, that Helton did not properly authenticate the search warrant at the hearing on his post-conviction petition and that the post-conviction court only admitted it for the limited purpose of showing that Helton's trial counsel had received it in the course of his representation of Helton. Thus, the State asserts that Helton did not properly present any evidence to support his contentions in his post-conviction petition. We cannot agree.

Indiana Evidence Rule 901(a) provides that the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Here, at the post-conviction hearing, Helton's trial counsel testified that Exhibit 1 was the search warrant that he received from the State through discovery. Further, the search warrant is signed by Lieutenant Drinkwine and the trial court. The State does not make any substantive challenge to the authenticity of the search

2. Lieutenant Drinkwine's references to Helton's arrests and convictions in the 1980s and the recent anonymous tips are insufficient to corroborate the CI's information. And, absent corroboration, the CI's claims regarding the type and amount of illegal drugs and the number of firearms at Helton's residence amount to little more than an anonymous tip. *See Newby*, 701 N.E.2d at 601.

3. The State contends that the evidence "was sufficient in aggregate to support ... at least good faith compliance with the warrant requirement." Brief of Appellee at 9. The ex-clusionary rule does not require the suppression of evidence obtained in reliance on a defective search warrant if the police relied on the warrant in objective good faith. *Newby*, 701 N.E.2d at 602. But because the probable cause affidavit was so lacking in indicia of probable cause as to render belief in its existence unreasonable, the good faith exception would not apply here. *See id.* Regardless, the State did not argue the good faith exception to the post-conviction court, so the issue is waived.

warrant, other than to claim that Helton has not provided a certified copy of the warrant. Indeed, in the initial hearing on Helton's post-conviction petition, the State acknowledged that it could not find its file to compare its copy of the search warrant with the copy proffered by Helton.[4] And the State asserted that it was "not contending that [the search warrant was inaccurate]." Transcript at 5. Finally, at oral argument, the State admitted that there was no reason to doubt that the copy of the search warrant was authentic. We hold that under these circumstances, the search warrant was properly authenticated to the post-conviction court.[5]

The post-conviction court found a "fatal flaw" in that it believed Helton had not "connect[ed] the affidavit and search warrant in question to the subject search or to the drugs in question[.]" Appellant's App. at 113. But our review of the evidence presented to the post-conviction court indicates that Helton did adequately connect the evidence. Helton presented several exhibits at the post-conviction hearing related to his conviction, including the abstract of judgment, charging information, and plea agreement. The information contained in each of those exhibits corresponds with the information contained in the search warrant. And, as we have already noted, Helton's trial counsel's testimony connected the search warrant to the subject search. Further, there is no indication that Helton's trial counsel represented him on any other occasion. There is nothing in the record to suggest that the

search warrant is related to another matter. Helton sufficiently connected the warrant with the evidence obtained pursuant to the search.

■ Finally, the State contends that Helton cannot show that his trial counsel was ineffective for pursuing a valid trial strategy. It is well settled that "[b]ecause all criminal defense attorneys will not agree on the most effective way to represent a client, 'isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.'" *Harris v. State*, 861 N.E.2d 1182, 1187 (Ind.2007) (quoting *Bieghler v. State*, 690 N.E.2d 188, 199 (Ind. 1997)). At the post-conviction hearing, Helton's trial counsel testified that he did not think that a motion to suppress would have been granted. And he testified that while he might have objected to the evidence when it was introduced at trial, he had expected the trial court to overrule any such objection. But Helton pleaded guilty before any of the evidence was introduced at trial.

In explaining his "strategy" on this issue, Helton's trial counsel reiterated that he did not believe that a motion to suppress would have been granted. He stated:

> I think to file it would be close to being a frivolous filing. . . . I really don't think there's any grounds for it to be granted. Frankly, I mean I know there is the allegation that it is uncorroborated hearsay; but basically I file the motion, the

---

4. Under Indiana Evidence Rule 1004(3), an original writing is not required where, "[a]t a time when an original was under the control of the party against whom offered, such party was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing[,] and such party does not produce the original at the hearing[.]" Those requirements were met here, and the

State's failure to provide the original search warrant affidavit cannot be held against Helton.

5. While the copy of the search warrant submitted as Exhibit 1 appears to have been altered by handwritten notes and underlining, those marks do not alter the substance of the search warrant.

snitch comes in to testify, it's corroborated, and I really don't see where it is going to be granted, frankly.

Transcript at 14–15. As that testimony makes clear, Helton's trial counsel misunderstood the law on this issue. A search warrant must show probable cause "on its face." *See Flaherty v. State*, 443 N.E.2d 340, 343 (Ind.Ct.App.1982) (quoting *Watt v. State*, 412 N.E.2d 90, 95 (Ind.Ct.App. 1980)). As our Supreme Court has observed, "[i]n this review, we consider only the evidence presented to the issuing magistrate and not post hoc justifications for the search." *Query v. State*, 745 N.E.2d 769, 771 (Ind.2001). Thus, the State cannot, after-the-fact, buttress its contention that probable cause existed at the time of the decision to issue the search warrant. *Id.* (citing *Watt*, 412 N.E.2d at 95). Contrary to trial counsel's belief, had the State called in the "snitch" to testify, that testimony would not have cured the lack of probable cause.

Given Helton's trial counsel's misunderstanding of the law which applies to this available and dispositive defense, he could not have given Helton competent advice on whether to plead guilty, and his perform-ance fell below an objective standard of reasonableness. And had trial counsel filed a motion to suppress, the trial court would have been compelled to grant that motion, and the State would have likely been obliged to dismiss the charges against Helton.[6] The burden to prove "a reasonable probability of acquittal" in making an ineffective assistance of counsel claim after pleading guilty is an onerous one. *See Segura*, 749 N.E.2d at 503. It is rare that we reverse the denial of a petition for post-conviction relief on these grounds, but Helton has satisfied that burden here. Helton has satisfied both prongs set out in *Strickland*. The law is with Helton, and, thus, we reverse the post-conviction court's order.

Reversed.

BAKER, C.J., and MAY, J., concur.

---

6. Helton gave a statement to police after the search warrant was executed, but that evidence would have been excluded as fruit of the poisonous tree. *See Hanna v. State*, 726 N.E.2d 384, 389 (Ind.Ct.App.2000) ("The 'fruit of the poisonous tree' doctrine is one facet of the exclusionary rule of evidence which bars the admissibility in a criminal proceeding of evidence obtained in the course of unlawful searches and seizures.").