## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 27 2017, 11:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT *PRO SE*

Stephen Lehman
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Stephen Lehman,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

July 27, 2017

Court of Appeals Case No.
35A05-1611-PC-2603

Appeal from the Huntington
Superior Court

The Honorable Jeffrey R.
Heffelfinger, Judge

Trial Court Cause No.
35D01-1106-PC-13

**Bradford, Judge.**

# Case Summary

[1] In April of 2009, Appellee-Respondent the State of Indiana ("the State") charged Appellant-Petitioner Stephen M. Lehman with Class A felony dealing in cocaine and Class A felony dealing in a schedule I, II, or III controlled substance. The State also alleged that Lehman was a habitual offender. Lehman was found guilty of the two Class A felony counts following a jury trial. Lehman thereafter pled guilty to the habitual offender allegation. He was later sentenced to an aggregate term of forty-two years. On April 13, 2010, we affirmed Lehman's convictions.[1]

[2] Lehman subsequently filed a petition seeking post-conviction relief ("PCR"), arguing that he suffered ineffective assistance of trial counsel. Following a hearing on Lehman's petition, the post-conviction court determined that Lehman had failed to establish that he had suffered ineffective assistance of trial counsel. On appeal, Lehman contends that he was denied a procedurally fair hearing on his PCR petition. Lehman also challenges the post-conviction court's determination that he failed to establish that he suffered ineffective assistance of trial counsel. We affirm.

# Facts and Procedural History

---

[1] Lehman did not challenge his sentence on appeal.

Our opinion in Lehman's direct appeal, which was handed down on April 13, 2010, instructs us to the underlying facts and procedural history leading to this post-conviction appeal:

> In August of 2008, Huntington City Police Detective Michael Slagel (Detective Slagel) worked with Charles Howard (Howard), a confidential informant. On August 5, 2008, Howard contacted Detective Slagel to inform the detective that he had a deal set up. Detective Slagel contacted other officers to help with the transaction and they all met with Howard at a predetermined meeting place. At the meeting place, Detective Slagel searched Howard and his vehicle and placed an electronic device on him. He also handed Howard $200 to purchase drugs.
>
> Howard, followed by the officers, traveled to 626 Court Street in Huntington, Indiana. The officers saw Howard pull into the alley at the residence and then lost visual contact. However, Detective Slagel was able to hear the transaction on the audio device and recognized both Howard and Lehman's voice. Detective Slagel heard Howard and Lehman talk about weighing out different amounts of cocaine, and discuss a "ball," "powder," and "doing a line." (Transcript p. 263). Huntington City Police Detective Cory Boxell (Detective Boxell), who also monitored the transaction through the audio device, heard Lehman talk about his upcoming appointment with his probation officer. When the transaction was complete, Howard left the residence and drove to the meeting place while being followed by the officers. At the meeting place, Howard handed Detective Slagel a clear plastic bag containing a white powdery substance. This substance tested positive for cocaine.
>
> On August 20, 2008, Detective Slagel received another call from Howard about setting up another deal with Lehman. Again, a meeting was set up at a predetermined place where Howard was searched. He was fitted with an electronic listening device and

given money to buy drugs. Howard and the officers drove to Lehman's residence in separate vehicles. Howard pulled into the alley and Huntington City Police Detective Chad Hacker (Detective Hacker)[2] saw Lehman walk up to Howard's vehicle. Detective Slagel and Officer Boxell, who were monitoring the audio device, heard Howard talk to Lehman about twenty milligram pills and thirty milligram pills. When the transaction was completed, Howard returned to the meeting place with the officers in tow and gave Detective Slagel a clear plastic bag with ten orange twenty-milligram Adderall capsules. In the fall of 2008, Howard died of a drug overdose.

On April 2, 2009, the State charged Lehman with Count I, dealing in cocaine, a Class A felony, I.C. § 35-48-4-1; and Count II, dealing in a schedule I, II, or III controlled substance, a Class A felony, I.C. § 35-48-4-2. The next day, the State amended this charging information by adding an habitual substance offender Count, I.C. § 35-50-2-10. On July 9 and 10, 2009, a jury trial was conducted. At the close of the evidence, the jury returned a guilty verdict on Counts I and II. Thereafter, Lehman pled guilty to the habitual substance offender charge. On August 11, 2009, during the sentencing hearing, the trial court sentenced Lehman to concurrent sentences of thirty-six years each on Counts I and II, and enhanced the sentence on Count I by six years because of the habitual substance adjudication. Lehman's aggregate sentence amounted to forty-two years.

*Lehman v. State*, 926 N.E.2d 35, 36-37 (Ind. Ct. App. 2010), *trans. denied*.

Lehman challenged his convictions on appeal, arguing that the trial court

---

[2] At some point between August 20, 2008, and the date of the post-conviction hearing, Detective Hacker was promoted to Chief of Police. He will therefore be referred to as "Chief Hacker" throughout the remainder of this memorandum decision.

abused its discretion by admitting certain evidence during trial. We affirmed Lehman's convictions.

[4] On June 15, 2011, Lehman filed a *pro-se* PCR petition. Lehman, by counsel, filed an amended PCR petition on May 15, 2015. In this amended petition, Lehman claimed that he received ineffective assistance from his trial counsel, Scott Harter ("Attorney Harter"). The post-conviction court held a three-day hearing June 21, June 23, and September 20, 2016, at which Lehman represented himself. On October 27, 2016, the post-conviction court issued an order denying Lehman's PCR petition. This appeal follows.

# Discussion and Decision

[5] Post-conviction procedures do not afford the petitioner with a super-appeal. *Williams v. State*, 706 N.E.2d 149, 153 (Ind. 1999). Instead, they create a narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules. *Id*. A petitioner who has been denied PCR appeals from a negative judgment and as a result, faces a rigorous standard of review on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001); *Colliar v. State*, 715 N.E.2d 940, 942 (Ind. Ct. App. 1999), *trans. denied*.

[6] Post-conviction proceedings are civil in nature. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Therefore, in order to prevail, a petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5);

*Stevens*, 770 N.E.2d at 745. When appealing from the denial of a PCR petition, a petitioner must convince this court that the evidence, taken as a whole, "leads unmistakably to a conclusion opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law." *Godby v. State*, 809 N.E.2d 480, 482 (Ind. Ct. App. 2004), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). We therefore accept the post-conviction court's findings of fact unless they are clearly erroneous but give no deference to its conclusions of law. *Id.*

# I. Procedurally Fair Hearing on PCR Petition

[7]   In arguing that he was denied a procedurally fair hearing on his PCR petition, Lehman appears to claim that he was not permitted to present newly-discovered evidence which he believed would necessitate a new trial.

> "[N]ew evidence will mandate a new trial only when the defendant demonstrates that: (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial." *Taylor v. State*, 840 N.E.2d 324, 329-30 (Ind. 2006) (quoting *Carter v. State*, 738 N.E.2d 665, 671 (Ind. 2000)). "This Court analyzes these nine factors with care, as the basis for newly discovered evidence should be

> received with great caution and the alleged new evidence carefully scrutinized." *Id.* at 330 (internal quotations omitted). The burden of showing that all nine requirements are met rests with the petitioner for post-conviction relief. *Webster v. State*, 699 N.E.2d 266, 269 (Ind. 1998).

*Kubsch v. State*, 934 N.E.2d 1138, 1145 (Ind. 2010).

[8] Review of the record reveals that Lehman's purpose for calling Chief Hacker to testify during the post-conviction hearing was to impeach Chief Hacker's trial testimony. During the post-conviction hearing, Lehman called his brother, Scott Thornsberry, as a witness. Lehman sought to elicit testimony from Thornsberry indicating that he had conducted his own investigation and had concluded that Chief Hacker's trial testimony indicating that he was able to identify Lehman from a distance on the date of the second controlled buy could not have been truthful. Chief Hacker testified in detail at trial about his involvement in the controlled buys and was thoroughly cross-examined by Attorney Harter. During the post-conviction hearing, Lehman merely attempted to impeach Chief Hacker's trial testimony by re-asking Chief Hacker some of the same questions as he was asked during trial. The post-conviction court granted Lehman significant leeway in questioning Chief Hacker before concluding Lehman's line of questioning. Upon review, we conclude that Lehman has failed to establish that all nine requirements set forth in *Kubsch* were met or that he was denied a procedurally fair hearing.

# II. Ineffective Assistance of Trial Counsel

The right to effective counsel is rooted in the Sixth Amendment to the United States Constitution. *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006). "'The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 685 (1984)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

A successful claim for ineffective assistance of counsel must satisfy two components. *Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007). Under the first prong, the petitioner must establish that counsel's performance was deficient by demonstrating that counsel's representation "fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id.* We recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client, and therefore, under this prong, we will assume that counsel performed adequately and defer to counsel's strategic and tactical decisions. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id.*

Under the second prong, the petitioner must show that the deficient performance resulted in prejudice. *Reed*, 866 N.E.2d at 769. Again, a petitioner may show prejudice by demonstrating that there is "a reasonable probability (*i.e.* a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* A petitioner's failure to satisfy either prong will cause the ineffective assistance of counsel claim to fail. *See Williams*, 706 N.E.2d at 154. Stated differently, "[a]lthough the two parts of the *Strickland* test are separate inquires, a claim may be disposed of on either prong." *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (citing *Williams*, 706 N.E.2d at 154).

Lehman complains that Attorney Harter provided ineffective assistance by: (A) depriving him of representation free from conflict, (B) failing to conduct an investigation into the sufficiency of the State's evidence, (C) failing to challenge the sufficiency of the probable cause affidavit or arrest warrant, (D) failing to investigate a potential alibi defense, and (E) failing to call certain potential witnesses at trial. We will discuss each in turn.

## A. Whether Attorney Harter Provided Ineffective Assistance by Failing to Provide Lehman with Representation Free from Conflict

Lehman asserts that Attorney Harter provided ineffective assistance by failing to provide him with representation free from conflict. In support of this argument, Lehman asserts that prior to trial, he and Attorney Harter experienced a breakdown of the attorney-client relationship. The breakdown

stemmed from Lehman's belief that Attorney Harter had failed to inform him of Howard's death in a timely fashion. However, Attorney Harter testified during the post-conviction hearing that although there was a temporary breakdown of the attorney-client relationship, the relationship was subsequently mended to the point where Attorney Harter was able to work with Lehman to effectively prepare for trial.

[14]    Lehman points to nothing in the trial record which would even suggest that Attorney Harter did not zealously represent Lehman at trial. Likewise, Lehman has failed to establish that there is a reasonable probability that, but for this temporary pre-trial breakdown of the attorney-client relationship, the result of Lehman's trial would have been different. As such, Lehman has failed to prove that he was prejudiced by the temporary pre-trial breakdown of his relationship with Attorney Harter. *See Reed*, 866 N.E.2d at 769.

## B.  Whether Attorney Harter Provided Ineffective Assistance by Failing to Conduct an Investigation into the Sufficiency of the State's Evidence

[15]    Lehman asserts that Attorney Harter provided ineffective assistance by failing to conduct an adequate investigation into the sufficiency of the State's evidence. Specifically, Lehman asserts that Attorney Harter failed to adequately investigate whether the State's evidence sufficiently outlined the procedures utilized by police during the controlled buys. Lehman also asserts that Attorney Harter failed to adequately investigate the sufficiency of the State's evidence to prove that he committed his acts within 1000 feet of a public park

or that each of the controlled buys involved the sale of more than three grams of drugs.

### *1. Evidence Relating to the Procedures Followed in Conducting the Controlled Buys*

[16]    We have long outlined the proper procedures for conducting a controlled buy as follows:

> A controlled buy consists of searching the person who is to act as the buyer, removing all personal effects, giving him money with which to make the purchase, and then sending him into the residence in question. Upon his return he is again searched for contraband. Except for what actually transpires within the residence, the entire transaction takes place under the direct observation of the police. They ascertain that the buyer goes directly to the residence and returns directly, and they closely watch all entrances to the residence throughout the transaction.

*Mills v. State*, 177 Ind. App. 432, 434, 379 N.E.2d 1023, 1026 (1978).

[17]    The facts of this case demonstrate that despite Lehman's assertion to the contrary, the police officers followed the procedure set forth in *Mills* when conducting the controlled buys. After being searched, Howard was under either direct visual or audio supervision by the officers involved. Attorney Harter thoroughly cross-examined the officers about their observations and the procedures employed. Lehman does not explain what more Attorney Harter could have reasonably done to challenge the State's evidence. As such, Lehman has failed to establish either that Attorney Harter's actions in this

regard fell below an objective standard of reasonableness or that he was prejudiced by Attorney Harter's actions.

## 2. *Evidence Relating to Distance from Public Park*

[18] Lehman asserts that Attorney Harter provided ineffective assistance by failing to complete an independent investigation into whether Lehman's criminal acts occurred within 1000 feet of a public park. At trial, the parties stipulated that Lehman's residence was within 1000 feet of Yeoman Park. A map created by the Huntington County Surveyor's Office prior to trial clearly demonstrated that both the entire residence located at 626 Court Street and the alley behind the residence are located within 1000 feet of Yeoman Park.

[19] Lehman seems to base his assertion that Attorney Harter provided ineffective assistance on the fact that it was never revealed in which room in the residence that the first controlled buy occurred in. However, it is important to note that what room of the residence that the controlled buy actually occurred in is irrelevant as the entire residence is located within 1000 feet of the park. The second controlled buy occurred in the alley behind the residence, which is also located within 1000 feet of the park.

[20] Lehman has failed to show what more Attorney Harter could have done, short of hiring an independent surveyor to measure the distance, to investigate the distance from the residence to the park. Such approach, however, hardly seems reasonable given the fact that the survey was completed by an uninterested entity and the record is completely devoid of any suggestion that the survey is

inaccurate. Because Lehman has failed to point to any evidence suggesting that the survey stipulated to by the parties was inaccurate or that there is any question as to whether the residence in question is located within 1000 feet of Yeoman Park, Lehman has failed to prove that he suffered any prejudice in this regard.[3]

[21] Furthermore, despite Lehman's assertion to the contrary, we are unpersuaded that Attorney Harter provided ineffective assistance by failing to raise certain unmeritorious defenses which related to the distance between the residence and the park. We disagree.

[22] Lehman claims that Attorney Harter should have argued that he was only temporarily within the 1000-foot radius of the park. He also claims that Attorney Harter should have argued that there was no evidence that any children were present at the time the controlled buys occurred. The evidence at trial demonstrated that Lehman lived in the residence in question. The evidence at trial also demonstrated that Lehman's residence, which again was within 1000 feet of the park, is surrounded by other residential buildings. As the State correctly notes, the likelihood of children being present in a residential area during the night hours is very high. Lehman has therefore failed to prove either that Attorney Harter performed below the accepted professional norm or

---

[3] We note that Lehman's reliance on *Doty v. State*, 730 N.E.2d 175 (Ind. Ct. App. 2000), is unavailing because, unlike the instant matter, in *Doty* the State failed to prove that the entire home in which the criminal activity occurred was within 1000 feet of the school property.

that he suffered any prejudice as a result of Attorney Harter's representation. Additionally, because the parties stipulated that Lehman's residence was within 1000 feet of the park, Attorney Harter cannot be found to have provided ineffective assistance for failing to request that the trial court instruct the jury about how to determine whether Lehman's residence was within 1000 feet of the park.

### 3. Evidence Relating to Amount of Drugs Sold

[23] At trial, Attorney Harter stipulated to the admissibility of the certificates of analysis which showed the weight of the drugs Howard received from Lehman during the controlled buys. The certificates demonstrated that the weight of the drugs from the first controlled buy was 3.47 grams and the weight of the drugs from the second controlled buy was 3.12 grams. The decision to stipulate to the admissibility of the certificates was a tactical decision which we will not second guess. *See Smith*, 765 N.E.2d at 585. Further, nothing in the record even suggests that Attorney Harter's decision in this regard fell below an objective standard of reasonableness. In addition, Lehman has presented no evidence indicating that the findings documented in the certificates were inaccurate or that an independent investigation would have generated different results. Lehman, therefore, has failed to prove that he suffered prejudice by Attorney Harter's stipulation to the admissibility of the certificates.

## C. Whether Attorney Harter Provided Ineffective Assistance by Failing to Challenge the Sufficiency of the Probable Cause Affidavit and Arrest Warrant

[24] Lehman also asserts that Attorney Harter provided ineffective assistance by failing to challenge the sufficiency of the probable cause affidavit and arrest warrant. In making this assertion, Lehman claims that the affidavit for probable cause "lacked the sufficiency of evidence required to determine whether the magistrate had a 'substantial basis' for concluding that probable cause existed and [trial] counsel failed to investigate the minimum information necessary to establish probable cause." Appellant's Br. p. 42. Specifically, Lehman argues that Attorney Harter erred by relying on the facts set forth by the State and failing to conduct an independent investigation into whether (1) Howard was a reliable witness and (2) the controlled buys actually occurred. In support, Lehman relies on this court's opinion in *Helton v. State*, 886 N.E.2d 107 (Ind. 2008), in which the court concluded that trial counsel provided ineffective assistance by failing to file a pre-trial motion to suppress evidence which was obtained pursuant to an allegedly inadequate search warrant. Lehman's reliance on this opinion is misplaced, however, because the Indiana Supreme Court subsequently vacated and overruled the opinion. *See Helton v. State*, 907 N.E.2d 1020 (Ind. 2009).

[25] Furthermore, it is important to note that unlike in *Helton*, the State did not discover any additional evidence as a result of the allegedly inadequate probable cause affidavit or arrest warrant.

> The illegality of the arrest, if in fact it was illegal, is of consequence at this stage of the proceedings, only if it is determined that evidence was obtained in consequence thereof and admitted at the trial. *Layton v. State* (1968), 251 Ind. 205, 209, 240 N.E.2d 489, 491; *Farmer v. State* (1971), Ind., 275 N.E.2d 783, 785. An illegal arrest does not destroy [a] valid conviction. *Wells v. State* (1971), 256 Ind. 161, 267 N.E.2d 371, 373; and does not amount to a denial of due process. *Dickens v. State* (1970), 254 Ind. 388, 260 N.E.2d 578, 579.

*Williams v. State*, 261 Ind. 385, 386-87, 304 N.E.2d 311, 313 (1973). In this case, Lehman's guilt was not established by the probable cause affidavit or arrest warrant alone. Rather, he was convicted following a jury trial during which Attorney Harter thoroughly cross-examined the witnesses. The jury, acting in its position as the trier-of-fact, had the opportunity to assess the credibility of the State's witnesses and the weight of the State's evidence. Upon review, we conclude that Lehman has failed to establish either that Attorney Harter's actions in this regard fell below an objective standard of reasonableness or that he was prejudiced by Attorney Harter's actions.[4]

---

[4] To the extent that Lehman's challenge can be interpreted as a challenge to the sufficiency of the evidence to sustain his convictions, we note that any such challenge has been waived because it was known and available but not raised on direct appeal. *See Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001) (providing that "[i]f an issue was known and available, but not raised on direct appeal, it is waived").

## D. Whether Attorney Harter Provided Ineffective Assistance by Failing to Investigate a Potential Alibi Defense

[26] Lehman asserts that Attorney Harter provided ineffective assistance by failing to investigate a potential alibi defense. Specifically, Lehman argues that Attorney Harter should have presented the alibi defense that he was working at the time of the August 5, 2008 controlled buy. Attorney Harter testified during the post-conviction hearing, however, that he contacted Lehman's then-employer prior to trial and was unable to confirm that Lehman was working at the time of the August 5, 2008 controlled buy. Attorney Harter indicated that he could not "think of anything else that [he] could have done to investigate [the potential] alibi" because he "just could not place him there at the time." PCR Tr. Vol. III, p. 110. Attorney Harter's testimony indicates that he did, in fact, investigate the potential alibi defense presented by Lehman. As such, Attorney Harter cannot be found to have provided ineffective assistance for allegedly failing to do so.

## E. Whether Attorney Harter Provided Ineffective Assistance by Failing to Call Certain Potential Witnesses at Trial

[27] Lehman last asserts that Attorney Harter provided ineffective assistance by failing to call certain potential witnesses at trial. Specifically, Lehman claims that these potential witnesses could have called his identity as the individual who sold drugs to Howard into question.

[28] Lehman claims that had Attorney Harter called his brother, *i.e.*, Thornburg, as a witness at trial, Thornburg would have testified that he did not believe Chief

Hacker could have identified Lehman during the second controlled buy. Lehman also claims that had Attorney Harter called his then-roommate, Dustin Johnson, as a witness at trial, Johnson would have testified that he and Lehman had agreed that there were to be no drugs in their residence because they were both on probation and that he never saw Lehman in possession of drugs. Lehman's mother, Sue, would have testified as to her familiarity with Lehman's voice and whether she believed the voice on the recordings belonged to Lehman. Lehman's ex-girlfriend, Jessica Lautzenhiser, would have testified that she saw Howard speak to an individual named Joshua Karst on August 5, 2008. However, it is worth noting that Lehman does not present any evidence indicating that Lautzenhiser would have testified that Howard did not also meet with Lehman on that date.

[29] As Lehman's trial counsel, it was appropriate for Attorney Harter to make the tactical decision whether to call each of the above-mentioned individuals to testify during trial. It seems reasonable that Attorney Harter could have determined that, given the strength of the State's case, these individuals would not have made credible witnesses or would only have been able to speculate, rather than testify to any specific facts. As we stated above, we will defer to Attorney Harter's strategic and tactical decisions. *See Smith*, 765 N.E.2d at 585. Lehman, therefore, has failed to establish that Attorney Harter provided deficient performance in this regard.

# Conclusion

[30] In sum, we conclude that Lehman has failed to prove that the post-conviction court erroneously denied his PCR petition. Accordingly, we affirm the judgment of the post-conviction court.

[31] The judgment of the post-conviction court is affirmed.

May, J., and Barnes, J., concur.